**STATE of Missouri, Respondent,**

v.

**Maura L. CELIS–GARCIA, Appellant.**

**No. SC 90980.**

Supreme Court of Missouri,
En Banc.

June 14, 2011.

Rosemary E. Percival, Public Defender's Office, Kansas City, for Appellant.

Evan J. Buchheim, Attorney General's Office, Jefferson City, for Respondent.

PATRICIA BRECKENRIDGE, Judge.

Maura Celis–Garcia was convicted by a jury of two counts of first-degree statutory sodomy in violation of section 566.062.[1] On appeal, she raises two points of error. First, she claims the trial court violated her constitutional right to a unanimous jury verdict because, although the state presented evidence of multiple, separate acts of hand-to-genital contact committed against her two minor daughters, the verdict directors failed to require the jury to agree to the specific acts she committed to find her guilty of a single count of statutory sodomy against each daughter.[2] Additionally, Ms. Celis–Garcia claims the trial court erred by overruling her objections to certain testimony by two expert witnesses because the testimony improperly vouched for the credibility of the victims, thereby invading the province of the jury. Because the trial court failed to instruct the jury that it had to agree on the same act or acts of hand-to-genital contact Ms. Celis–Garcia committed in finding her guilty of statutory sodomy, her right to a unanimous jury verdict was violated. Accordingly, the judgment is reversed, and the case is remanded.

## Factual and Procedural Background

■ This Court reviews the evidence in the light most favorable to the jury's verdict. *State v. Taylor,* 298 S.W.3d 482, 491 (Mo. banc 2009). Viewed in that light, the facts of the case are as follows: Ms. Celis–Garcia is the mother of two minor daughters, C.J. and K.J. In April 2006, C.J. and K.J., ages five and seven, were removed from Ms. Celis–Garcia's custody and placed in foster care. After being placed with their foster family, the children informed their foster mother that Ms. Celis–Garcia and her boyfriend sexually abused the children on several occasions. On learning this information, the children's foster parents contacted the division of family services. The children later were interviewed and taken to a hospital where they were given sexual assault forensic examinations (SAFE). The SAFE reports indicated that C.J. had a segment of her hymen missing, while K.J.'s genitals showed no abnormalities.

Ms. Celis–Garcia subsequently was charged with one count of first-degree statutory sodomy against C.J. and one count of first-degree statutory sodomy against K.J. Ms. Celis–Garcia initially was tried for those crimes in September 2007. That case resulted in a mistrial due to jury deadlock. The case subsequently was retried two months later.

---

1. Unless otherwise noted, all statutory references are to RSMo Supp.2005, which is the version of the revised statutes in effect when the offenses discussed in this opinion occurred.

2. "A person commits the crime of statutory sodomy in the first degree if he has *deviate sexual intercourse* with another person who is less than fourteen years old." Section 566.062.1 (emphasis added). "Deviate sexual intercourse" is defined, in relevant part, as "any act involving the genitals of one person and the *hand, mouth, tongue, or anus* of another person ... done for the purpose of arousing or gratifying the sexual desire of any person." Section 566.010(1) (emphasis added).

At the second trial, the state presented the testimony of both children through videotaped depositions. During her deposition, K.J. described three separate incidents of statutory sodomy. The first incident occurred on the enclosed back porch of Ms. Celis–Garcia's home. K.J. testified that Ms. Celis–Garcia and her boyfriend took her to the porch, removed her pants, and began touching her breasts, vagina, and buttocks with their hands.

The second incident occurred three or four days later in Ms. Celis–Garcia's bedroom. K.J. testified that her mother and her mother's boyfriend removed her clothes, restrained her hands and feet with handcuffs, and hung her on the bedroom wall by attaching the handcuffs to a rod or hook. Ms. Celis–Garcia and her boyfriend then touched K.J.'s genitals with their hands.

The third and final incident detailed by K.J. occurred when K.J. and C.J. were taking a shower. K.J. testified that her mother and her mother's boyfriend entered the bathroom, removed the two girls from the shower, and took them to the back porch where K.J. had been previously molested. Once on the back porch, Ms. Celis–Garcia and her boyfriend began touching both girls' private areas with their hands.

The state also showed the jury C.J.'s videotaped testimony. During her deposition, C.J. testified that Ms. Celis–Garcia and her boyfriend touched her genitals with their hands on more than one occasion. One incident occurred in Ms. Celis–Garcia's bedroom. C.J. testified consistently with her sister that Ms. Celis–Garcia and her boyfriend used handcuffs to hang the girls from the wall. C.J. also testified that another incident took place in a shed behind her home, where Ms. Celis–Garcia touched C.J.'s breasts and vaginal area. C.J. further testified that she witnessed multiple incidents in which her sister was touched by Ms. Celis–Garcia and her boyfriend.

The state also presented the testimony of Maria Mittelhauser, a forensic interviewer at a child advocacy center, and Ellen Walls, a licensed social worker, both of whom interviewed C.J. and K.J. regarding the allegations of statutory sodomy. During her testimony, Ms. Mittelhauser explained her interview process with the children. At the end of her testimony, the state played a video recording of the interview she conducted with the children. During the interview, the children recounted many of the incidents of statutory sodomy they described in their depositions. They also testified that Ms. Celis–Garcia and her boyfriend once entered the bathroom while the girls were bathing and began touching one or both of the girls' genitals. The incident was interrupted when one of the girls called to their grandmother, who came into the bathroom and stopped the incident from continuing.

During her testimony, Ms. Walls testified that the children also described to her incidents of sexual abuse by Ms. Celis–Garcia and her boyfriend. Like Ms. Mittelhauser, Ms. Walls also stated that the children described an occasion during which their grandmother stopped a sexual encounter involving their mother and the mother's boyfriend that occurred while the children were showering.

The defense presented one witness, Maria Garcia, the mother of Ms. Celis–Garcia and the grandmother of C.J. and K.J. Ms. Garcia testified that she never witnessed her daughter or the boyfriend inappropriately touching the children. She denied interrupting any abuse in the bathroom. She also testified that the children had a reputation for lying.

At the close of the evidence, the jury returned a verdict finding Ms. Celis–Garcia guilty on both counts of first-degree statutory sodomy. The trial court sentenced her to concurrent prison terms of 25 years on each count. Ms. Celis–Garcia appealed. After a decision by the court of appeals, this Court granted transfer. Mo. Const. art. V, sec. 10.

## Jury Instructions Did Not Require Unanimous Jury Verdict

■ Ms. Celis–Garcia first claims the trial court erred by submitting verdict directors that did not identify the specific incident or incidents of hand-to-genital contact that the jury was required to agree she committed in finding her guilty of statutory sodomy, thereby violating her right to a unanimous jury verdict. Ms. Celis–Garcia concedes she failed to object to the verdict directors submitted to the jury and requests that the Court review her claim for plain error.[3]

■ An unpreserved claim of error can be reviewed only for plain error, which requires a finding of manifest injustice or a miscarriage of justice resulting from the trial court's error. *State v. Severe*, 307 S.W.3d 640, 642 (Mo. banc 2010). For instructional error to constitute plain error, the defendant must demonstrate the trial court " 'so misdirected or failed to

instruct the jury' that the error affected the jury's verdict." *State v. Dorsey*, 318 S.W.3d 648, 652 (Mo. banc 2010) (quoting *State v. Salter*, 250 S.W.3d 705, 713 (Mo. banc 2008)).

In the present case, the trial court submitted Instruction No. 6, which instructed the jury on the first count of statutory sodomy committed against C.J. That verdict director read as follows:

As to Count 1 regarding the defendant Maura L. Celis–Garcia, if you find and believe from the evidence beyond a reasonable doubt:

First, *that between the dates of January 01, 2005 and March 31, 2006*[4], in the County of Saline, State of Missouri, *the defendant or [her boyfriend] placed her or his hand on [C.J.'s] genitals,* and

Second, that such conduct constituted deviate sexual intercourse, and

Third, that at that time [C.J.] was less than twelve years old, then you are instructed that the offense of statutory sodomy in the first degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Fourth, that with the purpose of promoting or furthering the commission of that statutory sodomy in the first degree, the defendant Maura L. Celis–Garcia acted together with or aided [her

---

3. The state argues that Ms. Celis–Garcia waived her right to plain error review by failing to object to the state's verdict directors and by submitting her own verdict directors that suffered from the same defect she now challenges on appeal. Contrary to the state's argument, this Court previously has determined that a defendant does not waive plain error review by failing to object to a faulty jury instruction or by failing to submit a correct instruction. *State v. Derenzy*, 89 S.W.3d 472, 475 (Mo. banc 2002) (submission of an incorrect instruction did not waive plain error review); *State v. Wurtzberger*, 40 S.W.3d 893, 897–98 (Mo. banc 2001) (counsel's affirmative statement that he had no objection to the

instruction and his failure to submit an alternative instruction did not waive plain error review).

4. The verdict directors changed the January 1, 2006 to May 31, 2006 timeframe listed in the indictment to January 1, 2005 to March 31, 2006. Ms. Celis–Garcia raises no claim regarding this date change. Because time is not of the essence in a statutory sodomy case, such a change does not impact the Court's decision. *See State v. Payne*, 452 S.W.2d 805, 809 (Mo.1970); *see also State v. Sprinkle*, 122 S.W.3d 652, 659 (Mo.App.2003).

boyfriend] in committing that offense, then you will find the defendant Maura L. Celis–Garcia guilty under Count 1 of statutory sodomy in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant Maura L. Celis–Garcia not guilty of that offense.

(Emphasis added). The language in Instruction No. 7, which instructed the jury on the second count of statutory sodomy committed against K.J., was identical to Instruction No. 6, except that it substituted K.J.'s name.

Ms. Celis–Garcia argues these verdict directors failed to ensure the jury reached a unanimous verdict because the verdict directors required only a general finding of hand-to-genital contact between the specified dates and did not require agreement by the jury on a specific incident of hand-to-genital contact to find her guilty. Ms. Celis–Garcia argues the instruction is insufficient because the state presented evidence that she and her boyfriend placed their hands on the children's genitals on separate occasions and at different locations. Without some differentiation in the verdict directors, Ms. Celis–Garcia contends that it is impossible to know which act or acts of hand-to-genital contact the jury agreed she committed when it found her guilty. Specifically, she argues that some of the jurors may have convicted her because they believed she placed her hands on C.J.'s genitals in the shed, while others may have disbelieved that evidence and, instead, convicted her based on the conduct that allegedly occurred in the bedroom or on the back porch.

■ Ms. Celis–Garcia premises her claim of right to a unanimous jury verdict on both the United States and Missouri constitutions. However, because the federal constitution does not require a unanimous verdict in state prosecutions [5], this Court only considers Ms. Celis–Garcia's claim that her rights were violated under the state constitution.

■ The Missouri Constitution provides, in pertinent part, "[t]hat the right of trial by jury *as heretofore enjoyed* shall remain inviolate...." Mo. Const. art. I, sec. 22(a) (emphasis added). This Court has interpreted the phrase "as heretofore enjoyed" as protecting "all the substantial incidents and consequences that pertain to the right to jury trial at common law." *State v. Hadley,* 815 S.W.2d 422, 425 (Mo. banc 1991) (citing *State ex rel. St. Louis, K. & N.W. Ry. v. Withrow,* 133 Mo. 500, 36 S.W. 43, 48 (1896)). One of the "substantial incidents" protected by article I, section 22(a) is the right to a unanimous jury verdict. *Hadley,* 815 S.W.2d at 425 (citing *State v. Hamey,* 168 Mo. 167, 67 S.W. 620, 623 (1902)). For a jury verdict to be unanimous, "the jurors [must] be in substantial agreement as to the defendant's acts, as a preliminary step to determining guilt." 23A C.J.S. *Criminal Law* § 1881 (2006); *State v. Jackson,* 242 Mo. 410, 146 S.W. 1166, 1169 (1912) ("The defendant is entitled to a concurrence of the minds of the 12 jurors upon one definite charge of crime.").

The factual scenario presented by Ms. Celis–Garcia's case is commonly referred to as a "multiple acts" case. *See* 75B Am.Jur. 2d *Trial* § 1511 (2007); *see also* 23A C.J.S. *Criminal Law* § 1882 (2006). A multiple acts case arises when there is evidence of multiple, distinct criminal acts,

---

**5.** *Apodaca v. Oregon,* 406 U.S. 404, 406, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972) (holding that a state court conviction by less than a unanimous jury does not violate a criminal defendant's Sixth Amendment right to trial by jury).

each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count. *Id.* To determine if a case is a multiple acts case, courts consider the following factors: "(1) whether the acts occur at or near the same time; (2) whether the acts occur at the same location; (3) whether there is a causal relationship between the acts, in particular whether there was an intervening event; and (4) whether there is a fresh impulse motivating some of the conduct." 75B Am.Jur. 2D *Trial* § 1511.

This is a case involving multiple acts. Accepting K.J. and C.J.'s videotaped statements as true, there were at least seven separate acts of statutory sodomy that occurred at different times (some more than three days apart) and in different locations. In her deposition testimony, K.J. alleged that her mother and her boyfriend touched her genitals on an enclosed back porch. On another occasion, three or four days later, K.J. alleged that her mother and her boyfriend touched her genitals in a bedroom. During a third encounter, K.J. testified that her mother and her boyfriend removed her and her sister from the bathroom and took them to the back porch and touched both girls on their genitals. In her deposition testimony, C.J. testified that her mother and her boyfriend touched her genitals on more than one occasion. Specifically, she alleged that one incident occurred in her mother's bedroom and that another incident took place in a shed. Finally, during their videotaped interview with Ms. Mittelhauser, K.J. and C.J. both testified about an incident in which their mother and the mother's boyfriend made hand-to-genital contact with one or both of the girls while they were in the bathroom.[6]

Despite evidence of multiple, separate incidents of statutory sodomy, the verdict directors failed to differentiate between the various acts in a way that ensured the jury unanimously convicted Ms. Celis–Garcia of the same act or acts. The verdict directors allowed the jury to find Ms. Celis–Garcia guilty of first-degree statutory sodomy if they believed "that between [specified dates] . . . the defendant or [her boyfriend] placed her or his hand on [the victim's] genitals. . . ." This broad language allowed each individual juror to determine which incident he or she would consider in finding Ms. Celis–Garcia guilty of statutory sodomy. Under the instructions, the jurors could convict Ms. Celis–Garcia if they found that she engaged or assisted in hand-to-genital contact with the children during an incident in her bedroom, *or* on the enclosed porch, *or* in the shed, *or* in the bathroom.

This Court addressed the issue of jury unanimity in multiple acts cases in *State v. Washington,* 242 Mo. 401, 146 S.W. 1164 (1912). In that case, the defendant was charged with one felony count of setting up and keeping gambling devices. *Id.* at 1165. Although the defendant was charged with only one offense, there was evidence at trial that the defendant kept more than one gambling table—a craps table and a poker table. *Id.* The instruction submitted to the jury allowed it to convict the defendant even though some of the jurors may have agreed to a verdict of guilty as to one table and disbelieved the testimony as to the other table, while the other jurors may have found the opposite to be true. *Id.* at 1166. The Court found the instruction clearly erroneous and reversed the defendant's conviction. *Id.* Similarly, in the companion case of *State v.*

---

6. Under the verdict directors, the jury could convict Ms. Celis–Garcia of statutory sodomy if she, herself, engaged in hand-to-genital con-

tact with the children or if she aided her boyfriend in doing the same. *See* section 562.041.1, RSMo 2000.

*Jackson,* the Court found reversible error when the record did not reveal which of the tables the defendant was found guilty of setting up and keeping. 146 S.W. at 1168–69.

In *State v. Pope,* the court of appeals dealt with facts virtually identical to the present case. 733 S.W.2d 811 (Mo.App. 1987). In that case, the defendant was convicted of two counts of sodomy against two minor victims. *Id.* at 812. At trial, one of the victims testified that she preformed sexual acts on the defendant on two different occasions. *Id.* The other victim testified that she had multiple sexual encounters with the defendant on separate occasions. *Id.* The verdict directors submitted to the jury provided that the defendant could be convicted if "the defendant had deviate sexual intercourse with [the victim]...." In reversing the defendant's conviction, the court noted that the verdict director made it impossible to determine which of the sexual acts the jury agreed the defendant committed in finding him guilty. *Id.* at 813.

■■■ In *Jackson,* discussed above, this Court stated that to avoid violating a defendant's right to a unanimous jury verdict in a multiple acts case, the state should be required to "elect" the specific act on which it asks the jury to convict. 146 S.W. at 1168. Other states have guaranteed a unanimous verdict by allowing the prosecution either to elect the particular criminal act on which it will rely to support the charge or to require the trial court to

specifically instruct the jury that it must agree on the same underlying criminal act.[7] *State v. Muhm,* 775 N.W.2d 508, 518–20 (S.D.2009); *State v. Gardner,* 118 Ohio St.3d 420, 889 N.E.2d 995, 1005–06 (2008); *State v. Voyles,* 284 Kan. 239, 160 P.3d 794, 800 (2007); *State v. Arceo,* 84 Hawai'i 1, 928 P.2d 843, 874–75 (1996); *Woertman v. People,* 804 P.2d 188, 191–92 (Colo.1991); *State v. Brown,* 762 S.W.2d 135, 137 (Tenn.1988); *State v. Kitchen,* 110 Wash.2d 403, 756 P.2d 105, 108 (1988). In these cases, the courts held that if the state fails to elect one specific act it will submit to support the conviction, the jury may be instructed on several different criminal acts in the disjunctive, but the jury must be instructed to agree unanimously on at least one of the criminal acts identified in the verdict director. 23A C.J.S. *Criminal Law* § 1647 (2006). This Court agrees that a defendant's right to a unanimous verdict would be protected in a multiple acts case by either the state (1) electing the particular criminal act on which it will rely to support the charge or (2) the verdict director specifically describing the separate criminal acts presented to the jury and the jury being instructed that it must agree unanimously that at least one of those acts occurred.[8]

The state correctly points out that the applicable patterned instructions in MAI do not require differentiation among multiple, separate criminal acts that each could constitute the charged offense, unless the defendant requests or the court elects to

---

7. The Missouri Approved Instructions–Criminal provide only that the jury's verdict, "whether guilty or not, must be agreed to by each juror." MAI–CR 3d 302.05. The approved instructions do not include an instruction directing that the jury agree on the same, specific criminal act in a multiple acts case.

8. The state argues that requiring the state to differentiate between multiple acts would make it impossible to prosecute sexual abuse

cases involving repeated, identical sexual acts committed at the same location and during a short time span because the victim would be unable to distinguish sufficiently among the acts. The case hypothesized by the state was not the one presented here because both K.J. and C.J. provided details of multiple sexual acts that were committed at different times and in different locations.

do so on its own motion. *See* MAI–CR 3d 304.02, Note on Use 6. Specifically, the note observes that "[t]he place of the offense may become of decisive importance under certain circumstances, such as . . . (c) where the defendant may have committed several separate offenses against the victim at the same general location within a short space of time." *Id.* "In such a situation, upon the request of the defendant or on the court's own motion, the place should be more definitely identified, such as 'the front bedroom on the second floor,' 'the southeast corner of the basement,' etc." *Id.*

 The modification permitted by the note on use is insufficient to protect a defendant's constitutional right to a unanimous jury verdict in a multiple acts case. First, the note on use is written in permissive rather than mandatory language, stating only "upon the request of the defendant or on the court's own motion, the place should be more definitely identified." *Id.* Second, the note limits the details identifying the separate offenses to location and does not take into consideration the timing of the offenses or other distinguishing characteristics. Most significantly, while the note on use permits multiple acts to be more definitely described in the verdict director, the note does not require that the jury unanimously agree on the same criminal act that serves as the basis for the defendant's conviction. It is insufficient to require only that the multiple acts be described with more specificity, without also requiring the jury to agree which of those acts the defendant committed. As noted above, to comply with the constitutional mandate that the jury reach a unanimous verdict, the verdict director not only must describe the separate criminal acts with specificity, but the court also must instruct the jury to agree unanimously on at least one of the specific criminal

acts described in the verdict director. To the extent MAI–CR and its notes on use conflict with this substantive law, they are not binding. *State v. Carson,* 941 S.W.2d 518, 520 (Mo. banc 1997) (citing *State v. Anding,* 752 S.W.2d 59, 61 (Mo. banc 1988)). " 'Procedural rules adopted by MAI cannot change the substantive law and must therefore be interpreted in the light of existing statutory and case law.' " *Id.*

In the present case, the verdict directors submitted by the state instructed the jurors to find Ms. Celis–Garcia guilty if they believed she committed sodomy by hand-to-genital contact generally. The state presented evidence of multiple, separate instances of hand-to-genital contact committed against both victims, any one of which would have supported the charged offenses. As such, the verdict directors were erroneous because they permitted the jury to convict Ms. Celis–Garcia of two counts of sodomy without identifying the acts the jurors were to agree she committed. Because it is impossible to determine whether the jury unanimously agreed on any one of these separate incidents, the verdict directors violated Ms. Celis–Garcia's constitutional right to a unanimous jury verdict under article I, section 22(a) of the Missouri Constitution.

 Having determined the trial court erred by failing to correctly instruct the jury, it is necessary to determine whether that error resulted in manifest injustice or a miscarriage of justice, thereby warranting reversal. Unlike some statutory sodomy cases in which the defense simply argues that the victims fabricated their stories, Ms. Celis–Garcia sought to exploit factual inconsistencies and raise doubts about the plausibility of the specific incidents of statutory sodomy alleged by her daughters. During closing argument, Ms. Celis–Garcia attacked the children's allega-

tions that they were hung by handcuffs attached to hooks by raising inconsistencies in the girls' testimony regarding the location of the hooks. She further attacked those allegations by noting that K.J. demonstrated inconsistent physical methods by which she was handcuffed to the wall and by noting that the state failed to present photographic evidence of alleged scarring to the girls' wrists that resulted from being hung with the handcuffs.

Regarding the bathroom incident, the girls' grandmother testified that she never interrupted any sexual encounter as the girls alleged. The grandmother further testified that she never witnessed any inappropriate sexual activity and never saw any handcuffs at the home. During closing, the defense emphasized the close proximity between the grandmother's bedroom and Ms. Celis–Garcia's bedroom, where several acts of statutory sodomy allegedly occurred. The defense argued it was highly unlikely for these acts to occur without the grandmother's knowledge. With respect to the incidents allegedly occurring on the enclosed back porch and the shed, the defense argued the implausibility of either event happening. Specifically, the defense noted the enclosed porch was surrounded by windows, making the acts visible to the public, while the shed was located across the road from the Celis–Garcia's home on a separate piece of property.

■ Of course, the jury was free to believe or disbelieve any of the witness testimony. *Keveney v. Missouri Military Academy,* 304 S.W.3d 98, 105 (Mo. banc 2010). However, the fact that Ms. Celis–Garcia relied on evidentiary inconsistencies and factual improbabilities respecting each specific allegation of hand-to-genital contact makes it more likely that individual jurors convicted her on the basis of differ-

ent acts. The Court finds that the verdict directors misdirected the jury in a way that affected the verdict, thereby resulting in manifest injustice. Accordingly, Ms. Celis–Garcia's convictions for first-degree statutory sodomy are reversed, and she is entitled to a new trial on those charges.

### Allegedly Improper Vouching by Expert Witnesses

Ms. Celis–Garcia next challenges the admission of certain testimony by two of the state's experts, Ellen Walls and Maria Mittelhauser. She argues that both experts gave opinions regarding the truthfulness of C.J. and K.J.'s allegations of sexual abuse, which invaded the province of the jury to determine the children's credibility.

Ms. Celis–Garcia argues that two statements made by Ms. Walls and one statement by Ms. Mittelhauser improperly vouched for K.J. and C.J.'s credibility. The first statement challenged by Ms. Celis–Garcia involved Ms. Walls's testimony that K.J. and C.J.'s behavior was consistent with the behavior of other victims of sexual abuse. The second statement challenged by Ms. Celis–Garcia was Ms. Walls' response to a question asking if she had any reason to doubt the truthfulness of the children's allegations. In response to the question, she stated that she had no reason to doubt their truthfulness. The final statement challenged by Ms. Celis–Garcia involved similar testimony by Ms. Mittelhauser in which she testified she had not received any information from the children to cause her to believe they were being untruthful.

■ In child sex abuse cases, there are typically two types of expert testimony that are challenged: generalized and particularized. *State v. Churchill,* 98 S.W.3d 536, 539 (Mo. banc 2003). An expert gives generalized testimony when he or she describes the general behaviors and charac-

teristics commonly found in children who have been sexually abused. *Id.* The trial court has discretion to admit generalized testimony. *Id.* On the other hand, an expert gives particularized testimony when he or she gives testimony regarding the specific victim's credibility as to whether the victim actually was abused. *Id.* That type of evidence is inadmissible because it usurps the jury's province to determine a witness's credibility. *Id.*

Because Ms. Celis–Garcia's conviction is reversed on the basis of her first point, the Court need not decide whether the admission of Ms. Walls and Ms. Mittelhauser's testimony was erroneous. Should the state seek to introduce the same testimony on remand, the trial court's ruling on the admissibility of that evidence should be governed by whether the testimony is generalized or particularized as defined in *Churchill.*

### Conclusion

Because the trial court failed to instruct the jury that it had to agree on the same act or acts of hand-to-genital contact Ms. Celis–Garcia committed in finding her guilty of statutory sodomy, her right to a unanimous jury verdict was violated. The trial court's failure to properly instruct the jury constituted plain error. Accordingly, the judgment is reversed, and the case is remanded.

All concur.