**STATE of Missouri, Respondent,**

v.

**Carl Emerson LESIEUR, Appellant.**

**No. WD 73361.**

Missouri Court of Appeals,
Western District.

Feb. 28, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 27, 2012.

Craig A. Johnson, Columbia, MO, for appellant.

Shaun J. Mackelprang and Evan J. Buchheim, Jefferson City, MO, for respondent.

Before: LISA WHITE HARDWICK, C.J., and JOSEPH M. ELLIS and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

Carl LeSieur was convicted in the Circuit Court of Boone County of two counts of second-degree statutory rape pursuant to § 566.034, RSMo 2000, for which he was sentenced to two seven-year sentences, to be served consecutively. On appeal, LeSieur contends that the trial court violated his constitutional right to a unanimous jury verdict because, although the state presented evidence of multiple, separate acts of statutory rape committed against the victim, the verdict directors failed to require the jury to agree to the specific act he committed to find him guilty of each count. Because LeSieur's defense to the charges did not distinguish between the various acts, we conclude that he has failed to establish a manifest injustice justifying plain-error review, and accordingly affirm his convictions.

## Factual Background

LeSieur was charged with two counts of second-degree statutory rape[1] involving a single female victim.[2] The information alleged that the first offense occurred between May 1, 2007, and August 7, 2007, and the second between August 8, 2007, and August 31, 2008.

LeSieur was tried before a jury. The evidence at trial established that during the summer of 2007, the victim was fifteen years old and a close friend of LeSieur's daughter. Because of difficulties within her own family, the victim spent a substantial amount of time at LeSieur's residence visiting his daughter. Whenever the victim visited the LeSieur residence, LeSieur would make sexual comments about the victim's figure. LeSieur also told his daughter that he wanted to have sex with the victim, and instructed her to talk to the victim about it.[3]

---

1. Under § 566.034.1, "[a] person commits the crime of statutory rape in the second degree if being twenty-one years of age or older, he has sexual intercourse with another person who is less than seventeen years of age."

2. LeSieur was initially charged in Callaway County, where the offenses occurred; the case was tried in Boone County following a change of venue.

3. LeSieur was convicted in a separate proceeding of multiple counts of statutory rape involving his daughter, and was serving his sentence for those convictions by the time of his sentencing in this case.

Sometime between May 1, 2007, and August 7, 2007, the victim stayed overnight at LeSieur's residence at 415 Carver in Fulton. LeSieur bought alcoholic beverages and cigarettes for the victim and his daughter in exchange for sexual intercourse with the victim. This encounter occurred on a couch in the basement of the 415 Carver residence; LeSieur's daughter was present, and held the victim's hand and comforted her during the ordeal. On a second occasion, LeSieur engaged in sexual intercourse with the victim in the basement at the 415 Carver address, in exchange for his agreement to allow his daughter to spend the night with the victim. During this second incident, LeSieur's daughter stayed on the front porch of the home, acting as a "lookout."

According to a stipulation of the parties, LeSieur's family moved from the residence at 415 Carver to 715 Gaylord, also in Fulton, "on or about" August 7, 2007. Following the family's move to 715 Gaylord, LeSieur engaged in sexual intercourse with the victim on two further occasions, first in exchange for allowing his daughter to see her boyfriend at the victim's home, and second after buying the victim and his daughter navel rings. These incidents occurred in the morning in LeSieur's daughter's bedroom, after LeSieur had driven his wife to work, and sent his daughter to another room to sleep.

LeSieur's daughter eventually notified police about these incidents. Initially, the victim denied that LeSieur had raped her, but eventually disclosed that they had in fact engaged in sexual intercourse. The victim initially told a police officer, a forensic interviewer at Rainbow House, a prosecutor, and the court during a preliminary hearing that all of the sexual acts had occurred in LeSieur's daughter's bedroom when his daughter was not present. During a discovery deposition in this case,

however, the victim divulged for the first time that two of the incidents had occurred in the basement at 415 Carver. At trial, the victim admitted that she had failed to disclose the incidents at 415 Carver earlier because she did not feel comfortable talking about such matters to people she did not know, and because she was trying to protect LeSieur's daughter by minimizing the daughter's involvement in the sexual encounters.

The jury found LeSieur guilty of both counts. He waived jury sentencing, and the court sentenced him to seven years on each count, to be served consecutively to each other and to the other sentences he was then serving for his convictions for statutory rape of his daughter. This appeal follows.

## Analysis

In his single Point Relied On, LeSieur claims the trial court plainly erred by submitting verdict directors that did not identify the specific incident of statutory rape on which each count was based, thereby violating his right to a unanimous jury verdict, and exposing him to potential double jeopardy in a future prosecution.

 LeSieur concedes that he failed to object to the verdict directors in the trial court, and requests this Court review the claim for plain error.

An unpreserved claim of error can be reviewed only for plain error, which requires a finding of manifest injustice or a miscarriage of justice resulting from the trial court's error. For instructional error to constitute plain error, the defendant must demonstrate the trial court so misdirected or failed to instruct the jury that the error affected the jury's verdict.

*State v. Celis–Garcia*, 344 S.W.3d 150, 154 (Mo. banc 2011) (citations and internal quotation marks omitted).

The trial court submitted Count I to the jury in Instruction No. 5, which read:

> As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or between May 1, 2007, and August 7, 2007, in the County of Callaway, State of Missouri, the defendant knowingly had sexual intercourse with [the victim], and
>
> Second, that at that time [the victim] was less than seventeen years of age, and
>
> Third, that at the time, Defendant was twenty-one years of age or older, then you will find the defendant guilty under Count I of statutory rape in the second degree.

The verdict director for Count II (Instruction No. 7) was identical, except that it specified that the charged time period was "between August 8, 2007, and August 31, 2008."

LeSieur argues that the verdict directors on each count failed to ensure that the jury reached a unanimous verdict because there was evidence of more than one act of statutory rape during each submitted time period, and the verdict directors did not require the jury to agree that LeSieur had committed a specific act within the relevant time periods in order to convict him. Without some differentiation among the various acts falling within each verdict director, and an instruction that the jury must unanimously agree to a single specific act, LeSieur contends that it is impossible to know which act or acts of

statutory rape the jury found that he had committed.

The Missouri Supreme Court recently addressed similar jury-unanimity arguments in *Celis–Garcia*.[4] As the Court explained there,

> The Missouri Constitution provides, in pertinent part, "[t]hat the right of trial by jury as heretofore enjoyed shall remain inviolate...." This Court has interpreted the phrase "as heretofore enjoyed" as protecting all the substantial incidents and consequences that pertain to the right to jury trial at common law. One of the "substantial incidents" protected by article I, section 22(a) is the right to a unanimous jury verdict. For a jury verdict to be unanimous, the jurors [must] be in substantial agreement as to the defendant's acts, as a preliminary step to determining guilt.

344 S.W.3d at 155 (citations and internal quotation marks omitted).

■ The factual scenario presented by LeSieur is referred to as a "multiple acts" case. *See id.* "A multiple acts case arises when there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count." *Id.* at 155–56. *Celis–Garcia* holds that

> a defendant's right to a unanimous verdict would be protected in a multiple acts case by either the state (1) electing the particular criminal act on which it will rely to support the charge or (2) the verdict director specifically describing the separate criminal acts presented to the jury and the jury being instructed

4. We note that this case was tried before the Supreme Court's decision in *Celis–Garcia*, and after this Court had issued an opinion rejecting Celis–Garcia's jury-unanimity arguments, which are very similar to the arguments LeSieur makes in this case. *State v. Celis–Garcia*, No. WD69199, 2010 WL 1539849 (Mo.App. W.D. April 20, 2010).

that it must agree unanimously that at least one of those acts occurred.

*Id.* at 157.

This is a "multiple acts" case. Accepting the victim's testimony as true, there were four separate incidents of sexual intercourse with LeSieur, at two different geographic locations, during the two charged time periods.

Two incidents occurred at the 415 Carver residence, and either of those acts could have served as the basis of the jury's guilty verdict on Count I. The victim testified that, in the first incident, LeSieur engaged in sexual intercourse with her in the basement on a couch while LeSieur's daughter "held [the Victim's] hand." LeSieur bought alcoholic beverages and cigarettes for the victim and his daughter in exchange for this sexual encounter. The second incident occurred when the victim was helping LeSieur's family move from the residence at 415 Carver to 715 Gaylord. The victim returned to the Carver home with LeSieur and his daughter to ensure that none of the family's belongings remained there. LeSieur and the victim engaged in sexual intercourse on the basement couch while his daughter remained outside the residence on the porch, acting as a "lookout." The victim stated that, on this second occasion, LeSieur allowed his daughter to spend the night with the victim in exchange for sex.[5]

The victim also testified that two incidents of sexual intercourse occurred at the Gaylord residence, either one of which could have supported conviction on Count II. The victim specifically stated that, on one occasion, LeSieur bought both his daughter and the victim navel rings in exchange for sexual intercourse with the victim. On the second occasion, in exchange for sex LeSieur agreed to allow his daughter to see her boyfriend at the victim's home. Both incidents occurred in the morning, in the daughter's bedroom, after LeSieur had driven his wife to work, and after he had sent his daughter to another room.

■ Despite evidence of two incidents of statutory rape falling within the time periods alleged in each count, the verdict directors failed to differentiate between the various acts in a way that ensured that, on each count, the jury unanimously convicted LeSieur based on his commission of the same act. The verdict directors allowed the jury to find LeSieur guilty of second-degree statutory rape if they believed "that on or between [specified dates] … defendant knowingly had sexual intercourse with [Victim], and … [Victim] was less than seventeen years of age, and … Defendant was twenty-one years of age or older.…" As in *Celis–Garcia*, "[t]his broad language allowed each individual juror to determine which incident he or she would consider in finding [LeSieur guilty of statutory rape]." 344 S.W.3d at 156. Under the instructions, individual jurors could have chosen to convict LeSieur of Count I if they believed that he engaged in sexual intercourse with the victim, in the

5. While the parties stipulated at trial that LeSieur was responsible for utility service at the 415 Carver address until "on or about" August 7, 2007, and became responsible for utilities at the 715 Gaylord address beginning "on or about" the same date, the evidence does not establish the last date on which LeSieur had access to the 415 Carver residence. Because the second incident occurred while the LeSieur's were in the process of moving from the Carver to the Gaylord address, the evidence does not clearly establish whether the "lookout" incident occurred during the time period charged in Count I, or was instead comprehended by Count II. Be that as it may, the State argued in closing that both incidents at the 415 Carver address fell within Count I, and LeSieur did not contest that characterization. Our analysis proceeds on that assumption.

basement at the Carver residence, *either* when his daughter held the Victim's hand, *or* when his daughter acted as a "lookout." Similarly, individual jurors could have convicted LeSieur of Count II if they found that he engaged in sexual intercourse with the Victim at the Gaylord residence *either* in exchange for navel rings, *or* in exchange for LeSieur's permission for his daughter to go to the victim's home to visit her boyfriend.

The State argues that the prosecutor made the election required by *Celis–Garcia* when he told the jury during closing argument that the rapes occurring in the basement at 415 Carver fell within Count I, while the rapes occurring in LeSieur's daughter's bedroom at 715 Gaylord were charged in Count II. What the State's argument fails to appreciate, however, is that it was required to distinguish not only *between the two counts*, but between the two instances of sexual intercourse which fell *within each count*. The verdict directors here suffer from the same flaw as in *Celis–Garcia*.[6]

The State also argues that further specificity was not possible, because the various acts falling within each count could not be distinguished based on location, or based on the time when a particular event occurred. We recognize that both incidents falling within Count I occurred on a couch in the basement at 415 Carver, and both incidents falling within Count II occurred on the bed in LeSieur's daughter's bedroom at 715 Gaylord; therefore, distinguishing the offenses based on *the location* where they occurred was not possible. In addition, the evidence did not identify specifically *when* any of the incidents occurred. Nevertheless, ample evidence existed to permit the court to differentiate between the instances of sexual intercourse within each count. As to Count I, the two incidents could have been distinguished based on LeSieur's daughter's different role in each incident (in one case, holding the victim's hand and comforting her, and in the other, acting as a "lookout" outside the residence); as to both counts, incidents could have been distinguished based on the items or actions offered by LeSieur in exchange for sex. *Celis–Garcia* recognizes that geographical location alone may not be sufficient to distinguish between multiple similar acts, and suggests that, where necessary, a verdict director must "take into consideration the timing of the offenses *or other distinguishing characteristics*." 344 S.W.3d at 158 (emphasis added). While such "distinguishing characteristics" may be the sort of "evidentiary detail" which should normally be omitted from verdict-directing instructions, the plain implication of *Celis–Garcia* is that such characteristics must be included in a verdict director in a "multiple acts" case, where necessary to preserve a defendant's right to a unanimous jury verdict. Such "distinguishing characteristics" were plainly available here.

"Having determined the trial court erred by failing to correctly instruct the jury, it is necessary to determine whether that error resulted in manifest injustice or a miscarriage of justice, thereby warranting reversal." *Id. Celis–Garcia* found such a manifest injustice because in that case

---

**6.** In *Celis–Garcia*, the State made a similar argument: that the verdict directors for two counts of statutory sodomy were sufficient, because they distinguished between the two alleged victims, the defendant's daughters. Like here, the State's argument in *Celis–Garcia* "misse[d] [the] point"—"[t]he fatal vagary

[t]here [was] not *between* the two verdict directors involving different victims, but *within* each verdict director relating to a single victim." *State v. Celis–Garcia*, No. WD69199, 2010 WL 1539849, at *16 n. 7 (Mo.App. W.D. April 20, 2010) (Ahuja, J., dissenting).

the defendant "sought to exploit factual inconsistencies and raise doubts about the plausibility of the specific incidents of statutory sodomy alleged by her daughters." 344 S.W.3d at 158; *see also id.* at 159 ("the fact that Ms. Celis—Garcia relied on evidentiary inconsistencies and factual improbabilities respecting each specific allegation of hand-to-genital contact makes it more likely that individual jurors convicted her on the basis of different acts"). *Celis–Garcia* distinguished the incident-specific defense mounted by the defendant in that case from other sexual offense prosecutions, "in which the defense simply argues that the victims fabricated their stories." *Id.* at 158.[7]

■ Unlike in *Celis–Garcia*, LeSieur did not defend against the charges by attacking any specific details of the separate incidents of statutory rape recounted by the victim and his daughter. Instead, LeSieur argued generally that the Victim had fabricated *all* of the allegations. LeSieur argued in his opening statement:

> You won't hear any evidence of why it is she's fabricated this story. Don't expect there to be any evidence of that. But at the end of the case here today, I'll ask you to take a look at all the evidence, everything that you've heard, and see it for the fabrication that it is and find Mr. LeSieur not guilty.

Similarly, the focus of LeSieur's cross examination of the victim[8] was her inconsistent statements made to police and prosecutors, and in her preliminary hearing testimony, regarding the instances of rape. During closing argument LeSieur again emphasized that all of the victim's allegations constituted fabrications:

> Earlier this morning I told you that I was going to ask, after the close of all the evidence, for you to see this case for what it is, for you to see that this is pure fabrication. And I'd suggest to you that there are a couple of different reasons why it ought to be clear that it is, in fact, a fabrication.

LeSieur also argued that the victim's account of what had happened was simply implausible and unworthy of belief, both given the nature of the acts she alleged, but also because she continued to visit the LeSieur home, and come into contact with LeSieur, despite the "horrible, unspeakable things" that she claimed had happened.

During her cross-examination, the victim acknowledged that she had not reported the incidents which occurred at 415 Carver in some of her initial statements; she explained that she had omitted those incidents because she had wanted to minimize the involvement of LeSieur's daughter. This cross-examination testimony would have provided the jury with a basis to distinguish between the incidents at 415 Carver and those at 715 Gaylord. This testimony did not, however, provide a basis to distinguish between the two incidents which could have supported conviction on Count I, both of which occurred at 415 Carver, and both of which the victim failed to initially disclose. Moreover, LeSieur did not seek to exploit the victim's belated disclosure of the incidents at 415 Carver as a basis to challenge those specific incidents; instead, he relied on the belated disclosure to argue that *the entirety of the victim's testimony* was unworthy of belief because (he claimed) the victim had shown

---

**7.** Because *Celis–Garcia* found a manifest injustice only because of the nature of the defense mounted in that case we reject LeSieur's contention that this error constitutes a "structural defect" mandating "automatic reversal," at least in the context of plain-error review

**8.** LeSieur did not cross examine his daughter.

she was willing to lie to further her own ulterior motives.

*Celis–Garcia* makes clear that, to establish manifest injustice based on an insufficiently specific verdict director in a "multiple acts" case, the defendant must have mounted an incident-specific defense, which would have given the jury a basis to distinguish among the various incidents mentioned in the evidence. *Celis–Garcia* suggests that, where the defendant instead mounts a unitary defense to all alleged actions, attacking the victim's credibility generally, manifest injustice does not exist. Consistent with this suggestion, other cases have recognized that a defendant is not prejudiced by verdict directors which fail to distinguish between different alleged acts, where the defendant presented a unitary defense to all incidents of alleged misconduct, instead of a defense which distinguished among the various acts. *See State v. Staples,* 908 S.W.2d 189, 190–91 (Mo.App. E.D.1995) (citing *State v. Cody,* 801 S.W.2d 430, 433 (Mo.App. E.D.1990)); *State v. Rudd,* 759 S.W.2d 625, 627–28 (Mo.App. S.D.1988).

Here, LeSieur's defense was common to all of the sexual encounters described by the victim: a general attack on her credibility, and emphasis on the supposed implausibility of the account she gave. The fact that LeSieur did not rely upon "evidentiary inconsistencies and factual improbabilities respecting each specific allegation" of statutory rape makes it unlikely that individual jurors convicted him based on different acts. *Celis–Garcia,* 344 S.W.3d at 159. For that reason, we cannot find "that the verdict directors misdirected the jury in a way that affected the verdict, thereby resulting in manifest injustice." *Id.*

■ LeSieur also argues that the vagueness of the verdict directors in this case potentially exposes him to double jeopardy. Prior cases have held, however, that a future court may look to the record to determine whether a defendant has been charged with an offense for which he was previously placed in jeopardy. *State v. Douglas,* 720 S.W.2d 390, 395 (Mo.App. S.D.1986); *State v. Rudd,* 759 S.W.2d at 628; *see also State v. Baker,* 103 S.W.3d 711, 723 (Mo. banc 2003) (finding similar double-jeopardy argument "simply not plausible" where "[t]here is no reason to believe that the state could bring a later claim charging appellant again" with the acts which were the subject of his prior trial). Here, an examination of the record of this case would identify the four acts of sexual intercourse for which LeSieur was tried; he may not be subject to reprosecution for those offenses in the future.

## Conclusion

The judgment is affirmed.

All concur.