STATE of Missouri, Respondent,

v.

Phillip Glen PAYNE, Appellant.

No. WD 75666.

Missouri Court of Appeals,
Western District.

Nov. 26, 2013.

Chris Koster, Attorney General, Evan J. Buchheim, Assistant Attorney General, Jefferson City, MO, Attorneys for Respondent.

Jeannette L. Igbenebor, Appellate Defender, Kansas City, MO, Attorney for Appellant.

Before Division Three: KAREN KING MITCHELL, Presiding Judge, and LISA WHITE HARDWICK and GARY D. WITT, Judges.

KAREN KING MITCHELL, Presiding Judge.

Phillip Payne appeals his conviction for one count of statutory sodomy, entered pursuant to section 566.062,[1] for which he was sentenced, following a jury trial, to twenty-five years' imprisonment. Payne argues that the trial court plainly erred in submitting the verdict director, which he alleges failed to sufficiently distinguish for the jury which of the three acts of sodomy

1. All statutory references are to the Missouri Revised Statutes (2000), as updated through the 2003 Cumulative Supplement, unless otherwise noted. All rule references are to the Missouri Supreme Court Rules (2013), unless otherwise noted.

described by the victim was at issue, thus violating Payne's right to a unanimous jury verdict. But because Payne's defense was a general denial and not an incident-specific defense, he has failed to demonstrate a manifest injustice resulting from the allegedly erroneous instruction. Therefore, we affirm his conviction and sentence.

### Factual and Procedural Background

In the spring and summer of 2004, Payne was an over-the-road truck driver, and he would occasionally visit his brother and his brother's family (consisting of Payne's sister-in-law, his niece, and his nephew (Victim)) when his route took him through Kansas City. During some of Payne's visits, he would babysit his niece and Victim while their parents went out for the evening. At the time, Victim was eleven years old and was finishing fifth grade.

On three of Payne's visits, Payne sodomized Victim. Victim testified that the circumstances surrounding the three incidents were nearly identical. After Victim's parents went out, Victim went to the basement to sit in the recliner and watch cartoons. Payne then went to the basement and directed Victim to remove his own clothing and position himself on his hands and knees on a futon located in the same room. While Victim faced the television, Payne approached Victim from behind and placed his penis inside Victim's anus. After five or ten minutes, Payne pulled his penis out of Victim's anus, zipped up his pants, and went back upstairs. After Payne went upstairs, Victim moved back into the recliner, covered himself with a blanket, and continued to watch cartoons. During the first incident, before Payne went upstairs, he warned Victim not to tell his parents, or Payne would kill them and make Victim watch. During the second and third incidents, Payne remind-

ed Victim of the earlier threat. Although Victim was scared of Payne, he tried not to give any outward indications of his fear in order to protect his family from Payne's threats.

On Payne's next visit, he was again left alone with the children. After dinner, Payne looked at Victim, smiled and laughed, and told Victim he should go downstairs. Victim got up, went into the kitchen, and retrieved a knife. Victim then walked up to Payne, put the knife to Payne's throat, and told Payne "to leave and never come back, and if [Victim] saw him, [Victim] would slit his throat with no hesitation." Victim then went downstairs to watch television, and Payne remained upstairs. When Victim went back upstairs to go to bed, he passed by Payne, but that was the last time Victim saw him. Payne left sometime in the middle of the night before Victim's parents returned. When Victim's parents returned, they woke Victim and asked where Payne was. Victim told his parents that Payne got called away for work earlier than he had anticipated; Victim did not mention anything about the sodomies or his threat towards Payne. Payne never visited Victim's family again.

Because he wanted to keep his friends and family safe, Victim did not reveal what Payne had done to him until Victim was in high school. Victim had tried to block the events from his memory, but in the spring of 2010, Victim came across a picture of Payne on his cousin's Facebook page, and the memories came back. On March 8, 2010, Victim told his school counselor about the sodomies.

Payne was charged as a prior offender with a single count of first-degree statutory sodomy. Payne's defense at trial was that Victim fabricated the allegations, allegedly to receive attention from both his parents and friends, and that nothing inappropriate ever occurred between Payne

and Victim. During the instructions conference, Payne announced that, other than a general objection to the case being given to the jury at all, he had "no objection" to the form of any of the instructions, including the verdict director. In the verdict director, the jury was instructed to find Payne guilty if it found beyond a reasonable doubt:

First, that between April 1, 2004 and August 31, 2004, in the County of Clay,

State of Missouri, [Payne] knowingly touched [Payne's] genitals with [Victim's] anus,[2] and

Second, that such conduct constituted deviate sexual intercourse, and

Third, that at that time [Victim] was a child less than fourteen years old[.]

The verdict director also defined "deviate sexual intercourse."

The jury found Payne guilty, and the court sentenced him to twenty-five years' imprisonment. Payne appeals.

### Standard of Review

■ Payne's only challenge on appeal is to the form of the verdict director. But at trial, as noted, when asked if he had any objections to any of the instructions, Payne affirmatively stated that he had "no objection" to "the actual form" of any of the instructions. Rule 28.03 provides: "No party may assign as error the giving or failure to give instructions or verdict forms unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." Nevertheless,

"[u]npreserved claims of plain error may still be reviewed under Rule 30.20 if manifest injustice would otherwise occur." *State v. Wurtzberger*, 40 S.W.3d 893, 898 (Mo. banc 2001).

"Plain error review is a two-step process. First, we determine whether or not the claimed error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. Error is plain if it is evident, obvious, and clear. If we do not find plain error on the face of the claim, we should decline to exercise our discretion to review the claimed error under Rule 30.20. If we do find plain error on the face of the claim, we have the discretion to proceed to the second step to consider whether a manifest injustice or a miscarriage of justice will result if the error is left uncorrected."

*State v. Brightman*, 388 S.W.3d 192, 204 (Mo.App.W.D.2012) (quoting *State v. Fincher*, 359 S.W.3d 549, 553–54 (Mo.App. W.D.2012)).

### Analysis

■ Payne argues that the trial court erred in submitting the verdict director to the jury because the instruction failed to sufficiently distinguish among the three incidents of sodomy described by Victim at trial. Thus, he argues, his right to jury unanimity pursuant to the Missouri Constitution[3] was violated, resulting in a manifest injustice. We disagree.

■ In *State v. Celis–Garcia*, 344 S.W.3d 150, 155–56 (Mo. banc 2011), the

---

2. It is unclear why the State chose to characterize the touching in this manner. It would have been clearer and more accurate to describe it as Payne touching, or even penetrating, Victim's anus with Payne's genitals.

3. "The Missouri Constitution provides, in pertinent part, '[t]hat the right of trial by jury *as*

heretofore enjoyed* shall remain inviolate.' " *State v. Celis–Garcia*, 344 S.W.3d 150, 155 (Mo. banc 2011) (quoting Mo. Const. art. I, § 22(a)). At common law, a jury verdict in a criminal case had to be unanimous; thus, the Missouri Constitution provides a right to jury unanimity in criminal prosecutions. *Id.*

Missouri Supreme Court described a "multiple acts case" as one in which "there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count." The Court then held that, in a multiple acts case, "to comply with the constitutional mandate that the jury reach a unanimous verdict," not only must the verdict director "describe the separate criminal acts with specificity," but also the court "must instruct the jury to agree unanimously on at least one of the specific criminal acts described in the verdict director." *Id.* at 158.

The State concedes that Payne's case was a multiple acts case, making it subject to the requirements identified in *Celis–Garcia*. The State argues, however, that there was no error in Payne's case because the three acts described by Victim were indistinguishable. While we agree with the State that the second and third acts described by Victim are indistinguishable from one another, we disagree that the first act described could not be distinguished from the other two. The first act described occurred in the spring of 2004, while Victim was still in school; whereas the second and third acts described occurred in the summer of 2004, when Victim was out of school for summer vacation. With the first act, Victim indicated that he ate dinner upstairs before going to the basement to watch cartoons, but for the other two described acts, Victim testified that he ate dinner downstairs to avoid Payne. And finally, as to the first act, Victim testified that Payne threatened to kill Victim's parents while Victim watched; but, as to the second and third described acts, Victim testified that Payne merely advised him to "remember the threat and [he]'d better obey it."

■ Because Payne was charged with only one count and at least one of the acts was distinguishable, the verdict director should have made the distinction plain for the jury in order to ensure that Payne's right to jury unanimity was not violated.[4] *See State v. LeSieur*, 361 S.W.3d 458, 463 (Mo.App.W.D.2012) (holding that distinguishing "characteristics must be included in a verdict director in a 'multiple acts' case," where they are both available and "necessary to preserve a defendant's right to a unanimous jury verdict").

■ Finding error, however, does not end our inquiry. Under plain error review, the error must also have resulted in a manifest injustice or miscarriage of justice in order for the appellant to obtain relief. *Id.* "[T]o establish manifest injustice based on an insufficiently specific verdict director in a 'multiple acts' case, the defendant must have mounted an incident-specific defense, which would have given the jury a basis to distinguish among the various incidents mentioned in the evidence." *Id.* at 465. "[W]here the defendant instead mounts a unitary defense to all alleged actions, attacking the victim's credibility generally, manifest injustice does not exist." *Id.*

■ Here, Payne's defense consisted entirely of attacking Victim's credibility and identifying numerous inconsistencies in his statements and testimony so as to prove that *all* of Victim's allegations were fabricated. It was simply a general denial and not incident specific. Where a defendant does "not rely upon 'evidentiary inconsistencies and factual improbabilities respecting each specific allegation[,]' . . . it

---

4. In light of our resolution of this case, we need not—and do not—decide whether there would be error if Payne had been charged with two separate counts of statutory sodomy, in light of the indistinguishable nature of the second and third acts described.

[is] unlikely that individual jurors convicted him based on different acts." *Id.* (quoting *Celis–Garcia*, 344 S.W.3d at 159).

 Payne argues that the prosecutor encouraged the jurors to pick and choose parts of each incident to reach a verdict on a single charge when she made the following statement:

> We only allege that it happened once. We only said that it happened once, and that's all you have to find. You don't have to find that it happened three times. You just have to find that on one occasion it happened. I'm trying to give you three different occasions. So we know who it happened to, and we know where and we know when.

We do not read the prosecutor's statement to be as devious as Payne contends. Rather, it appears that the prosecutor was simply emphasizing for the jury that there was only a single charge involved in the case, despite the presentation of evidence identifying three separate criminal acts. And, in any event, the nature of the prosecutor's comments did not change the nature of Payne's defense. Simply put, if the jury credited Payne's defense, it would have found him not guilty, even if the jury understood the prosecutor's argument as Payne suggests. Instead, the jury apparently credited the State's evidence and found Payne guilty. As in *LeSieur*, there is simply no manifest injustice resulting from the lack of specificity in Payne's verdict director.

Point denied.

## Conclusion

Although the verdict director failed to sufficiently distinguish among the various acts of sodomy described by Victim at trial, Payne failed to establish any resulting manifest injustice in light of his general denial defense. Payne's conviction and sentence are affirmed.

LISA WHITE HARDWICK and GARY D. WITT, Judges, concur.