In the
 Missouri Court of Appeals
 Western District

 
 MAURICE R. HOGAN, 
 
 Appellant,  WD83668
 v.  OPINION FILED:
 
 STATE OF MISSOURI,  AUGUST 3, 2021
 
 Respondent. 
 
 

 Appeal from the Circuit Court of Cole County, Missouri
 The Honorable Patricia S. Joyce, Judge

 Before Division One: Alok Ahuja, Presiding Judge, Lisa White Hardwick, Judge,
 Anthony Rex Gabbert, Judge

 Maurice R. Hogan appeals the denial, after an evidentiary hearing, of his Rule 29.15 motion

for post-conviction relief. He contends the motion court clearly erred in, 1) denying Hogan’s claim

that trial counsel was ineffective to his prejudice for failing to object to Instruction No. 8, arguing

the instruction failed to specify a particular incident of Hogan touching A.P.’s genitals in Count II,

although the State presented evidence of multiple acts of Hogan touching A.P.’s genitals, thereby

allowing for the possibility that the jurors failed to unanimously find him guilty of the same

incident; 2) denying Hogan’s claim that appellate counsel was ineffective to his prejudice for

failing to raise a claim challenging the trial court’s submission of Instruction No. 8, arguing that
the instruction failed to specify a particular incident of Hogan touching A.P.’s genitals in Count II,

although the State presented evidence of multiple acts of Hogan touching A.P.’s genitals, thereby

allowing for the possibility that the jurors failed to unanimously find him guilty of the same

incident; 3) denying Hogan’s claim that trial counsel was ineffective to his prejudice for failing to

object to Instruction No. 11, arguing the instruction failed to specify a particular incident of sexual

misconduct involving a child by indecent exposure in Count V, although the State presented

evidence of multiple acts of Hogan exposing his genitals to A.P., thereby allowing for the

possibility that the jurors failed to unanimously find him guilty of the same incident; 4) denying

Hogan’s claim that appellate counsel was ineffective to his prejudice for failing to raise a claim

challenging the trial court’s submission of Instruction No. 11, arguing the instruction failed to

specify a particular incident of indecent exposure to A.P. for Count V, although the State presented

evidence of multiple acts of Hogan exposing his genitals to A.P., thereby allowing for the

possibility that the jurors failed to unanimously find him guilty of the same incident; 5) and

denying Hogan’s claim that trial counsel was ineffective to his prejudice for failing to object to

Ashton Eibel’s improper “vouching” testimony during the State’s publication of portions of A.P.’s

forensic interview. We affirm.

 Background and Procedural Information1

 A grand jury indicted Hogan in September 2015, charging him with first-degree statutory

rape for having sexual intercourse with A.P., who was younger than age twelve (Count I); first-

degree child molestation for subjecting A.P., a child younger than age fourteen, to sexual contact

by touching her vagina (Count II); first-degree child molestation for subjecting N.P., a child

 1
 We borrow extensively from the background information provided in the Memorandum issued by this court
in Hogan’s direct appeal.

 2
younger than age fourteen, to sexual contact by touching her vagina (Count III); first-degree child

molestation for subjecting M.P., a child younger than age fourteen, to sexual contact by touching

her vagina (Count IV); and sexual misconduct involving a child by indecent exposure for exposing

his genitals to A.P., a child younger than age fifteen, to arouse his sexual desire (Count V).

 The case proceeded to jury trial in February 2017. The evidence showed that the alleged

victims are the children of Hogan’s former girlfriend with whom he lived during the months the

alleged sexual contacts occurred—May through July 2015. Mother went to work on July 7, 2015,

and Hogan remained at home to take care of N.P., who was then ten years old, and the twins, M.P.

and A.P., who were seven years old. Upon learning from a neighbor that the children had been

overheard talking about A.P. doing things in bed with Hogan, Mother left work and questioned the

children separately about whether Hogan had touched them inappropriately; they each said yes.

During an interview that was recorded and that the defense played, in part, for the jury, the children

also told a police officer that Hogan had touched their private parts.

 The girls gave more details about the alleged sexual contacts when questioned by a

Rainbow House therapist during a forensic interview. The therapist’s interview with A.P. was

recorded, and a redacted version of the video recording was shown to the jury over a defense

hearsay objection. A.P. disclosed that Hogan touched her private part with his finger and put his

private part inside her private part. She circled the vagina on an anatomical drawing to specify

what she meant by her private part and circled the penis on an anatomical drawing to specify what

she meant by Hogan’s private part. She also drew a picture of Hogan’s penis. She disclosed

additional details as to her position on the bed, how Hogan’s penis was sticking up, and that it hurt

when his private went inside her private. According to A.P., the touching happened more than

once, while the intercourse may have occurred just once. She also told the therapist that the

 3
touching was “gross and disgusting.” A.P. further disclosed that Hogan threatened her with “the

worst whoopin of her life” if she told anyone about what he was doing.

 Mother provided to the police blue hair grease from her bathroom that A.P. had identified

during the forensic interview as a substance used for lubrication. A.P.’s SAFE exam was normal;

the pediatrician who conducted the exam testified that a normal exam is not conclusive as to

whether abuse has or has not occurred. A.P. did not testify at trial, rather her in-camera videotaped

victim deposition was played, over Hogan’s objection, for the jury.

 When questioned by the police, Hogan initially denied any sexual contact with the children.

Later in the interview, however, Hogan “admitted that he touched all three of their vaginas” and

indicated that he needed help. This interview was videotaped and shown to the jury without

objection. During the interview, Hogan gestured twice to show how he had touched the girls, once

with a slapping motion and then with a grabbing motion. According to the interviewing officer,

Hogan stated that the girls had not lied about being touched. Before Hogan testified in his own

defense, defense counsel read into the record certain portions of the children’s depositions. Those

portions relating to A.P. were responses to questions about whether Hogan had touched her, the

girls had talked with each other about what had happened, and M.P. had watched “nasty cartoons”

on the phone. In rebuttal, the State introduced additional portions of the children’s depositions.

Defense counsel also referred to parts of the depositions and the in-camera videotaped victim

depositions during closing argument to highlight inconsistencies in the children’s statements about

what had occurred.

 The jury convicted Hogan of the crimes charged in Count II (first-degree child molestation

involving A.P.) and Count V (sexual misconduct involving a child by indecent exposure involving

A.P.). He was found not guilty as to all other counts. Hogan filed a motion for new trial, raising

 4
the violation of his speedy trial and confrontation rights, among other matters. The trial court

overruled the motion without argument and sentenced Hogan to twenty-five years in the

Department of Corrections on Count II and five years on Count V, to be served concurrently.

Hogan appealed his convictions in a direct appeal in WD80593, and this court affirmed his

convictions. State v. Hogan, 554 S.W.3d 917, 918 (Mo. App. 2018).

 Hogan filed a pro se Rule 29.15 motion for postconviction relief on October 26, 2018.

Appointed counsel filed an amended motion on January 24, 2019. Therein, Hogan contended,

among other things, that trial counsel was prejudicially ineffective for failing to object to the

State’s verdict directors which allowed an improper “multiple acts” situation in violation of his

right to a unanimous verdict, and that appellate counsel was equally ineffective for failing to raise

the issues on direct appeal. Further, that trial counsel was ineffective for failing to object when

State’s witness, Ashton Eibel, vouched for A.P.’s credibility while giving commentary during

publication of State’s Exhibit 7A.

 An evidentiary hearing was held January 9, 2020. As relevant to the issues in this appeal,

Hogan’s trial counsel testified that his theory of the case was that Hogan was innocent and had not

committed any of the charged offenses. Trial counsel’s strategy was that, either the children were

lying, or they were telling what they thought was the truth but had been coached by their mother

to make false allegations. Trial counsel stated that A.P. had said that Hogan inappropriately

touched her multiple times. Trial counsel “vaguely” recalled that A.P. had stated that some

allegations were in her bedroom while others were in her mother’s bedroom, but counsel had not

put a tremendous amount of thought into the facts of the case in preparation for the Rule 29.15

hearing. Counsel indicated that a “big part” of his trial strategy was that he believed that statements

from A.P. “were kind of across the board both in time and substance.”

 5
 Trial counsel agreed that he did not present an incident specific defense, but had contended

that “Hogan did not touch any of those girls inappropriately on any date ever.” When trial counsel

was asked if there was any strategy reason for letting the verdict directors go back as they were,

counsel stated, “No, not that I can think of,” and indicated that he “should have raised a Celis-

Garcia2 issue[.]”

 Trial counsel was asked if counsel recalled Ashton Eibel testifying and if counsel believed

that Eibel vouched for A.P.’s credibility. Trial counsel responded:

 So, I mean, she didn’t come out and say, ‘I believe A.P. was telling the truth
 because of this.’ But she did drop other – I don’t know – nuggets and tidbits that I
 do think indicate that she was trying to telegraph to the jury that in her opinion and
 in her experience that the girls were being truthful or specifically A.P. in this case.

Trial counsel testified that he had no strategic reason for not objecting to this testimony by Eibel.

 Appellate counsel also testified at the hearing. Appellate counsel was asked whether

counsel considered raising a point “about the forensic interviewer dropping phrases that suggested

that A.P. was credible?” Appellate counsel responded, “I didn’t raise that. In a lot of these cases

that I have had, the CAC interviewer or the forensic interviewer will testify along the lines that

this woman did, and it’s not objectionable. The Court’s never found that it’s been objectionable,

so I didn’t raise it.” Appellate counsel acknowledged that, had it been raised, it would have been

raised as plain error. Appellate counsel testified that counsel was aware of case law holding that,

while general testimony describing behaviors and other characteristics commonly observed in

sexually abused victims, called profile testimony, is admissible, the State goes too far when it seeks

to introduce evidence related to the credibility of a witness. Counsel stated, “I guess my position

was I didn’t see that in [the forensic interviewer’s] testimony.” Appellate counsel was then asked

 2
 344 S.W.3d 150 (Mo. banc 2011).

 6
if counsel was specifically familiar with “the State versus Williams case from 2018 that talks about

how when a forensic interviewer points out that the child is able to give idiosyncratic detail that

it’s a comment on the alleged victim’s credibility.” Appellate counsel stated that she was not.

 Appellate counsel was asked if counsel was familiar with the Celis-Garcia case and

whether in reviewing Hogan’s file in preparing her appellate brief she recognized a Celis-Garcia

issue. Appellate counsel responded, “I missed it,” and testified that counsel had no strategy for

not raising it. Appellate counsel testified that, had she raised the issue, she would have argued

that, “there’s no way to know whether or not the jury in Mr. Hogan’s case found him guilty of the

same action against A.P. as maybe another juror found one of the other acts that she testified to”

and “he’s entitled to a unanimous verdict.”

 The circuit court issued its Findings of Fact, Conclusions of Law, and Judgment on

February 14, 2020. As relevant to the issues raised in this appeal, the court made the following

findings of fact:

 A review of the transcript from Movant’s Supreme Court Rule 29.15
 hearing reveals that Movant never demonstrated the prejudice necessary for this
 Court to conclude that the outcome of the trial would have been different if trial or
 appellate counsel raised a Celis-Garcia objection at either the trial stage or on direct
 appeal. Additionally, Movant failed to demonstrate the prejudice necessary for this
 Court to conclude that the outcome of the trial would have been different … if Ms.
 Eibel’s testimony had been excluded.

In the court’s “Conclusions of Law,” it determined that trial and appellate counsel’s failure to raise

a Celis-Garcia objection was neither unreasonable nor prejudicial to Hogan, citing State v.

Escobar, 523 S.W.3d 545 (Mo. App. 2017) and Barmettler v. State, 399 S.W.3d 523, 530 (Mo.

App. 2013). The court further concluded that, trial counsel’s decision to not object to the forensic

interviewer’s alleged “vouching” testimony was made at counsel’s discretion and a matter of trial

strategy, citing State v. Edwards, 365 S.W.3d 240 (Mo. App. 2012).

 7
 This appeal follows.

 Standard of Review

 Our review of the denial of a Rule 29.15 motion is limited to determining whether the

circuit court’s findings of fact and conclusions of law are clearly erroneous. Rule 29.15(k). We

view the facts in the light most favorable to the verdict and judgment. Ervin v. State, 80 S.W.3d

817, 820 n.1 (Mo. banc 2002). We presume the findings to be correct and will reverse only with

a definite and firm impression that a mistake was made. Zink v. State, 278 S.W.3d 170, 175 (Mo.

banc 2009).

 To prove ineffective assistance of counsel, Hogan must meet the test set forth in Strickland

v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Gennetten v. State, 96

S.W.3d 143, 147 (Mo. App. 2003). Under Strickland, Hogan must establish that (1) his counsel

failed to exercise the skill and diligence of a reasonably competent attorney under similar

circumstances, and (2) his counsel’s deficient performance prejudiced him. Id. at 147-148;

Johnson v. State, 333 S.W.3d 459, 463 (Mo. banc 2011). “Should a movant fail to satisfy either

element, the appellate court on review need not consider the other.” Slater v. State, 147 S.W. 3d

97, 101 (Mo. App. 2004). “To demonstrate prejudice, a movant must show that, but for counsel’s

poor performance, there is a reasonable probability that the outcome of the court proceeding would

have been different.” Williams v. State, 386 S.W.3d 750, 752 (Mo. banc 2012) (internal quotations

and citations omitted). “A reasonable probability is a probability sufficient to undermine

confidence in the outcome.” Deck v. State, 68 S.W.3d 418, 426 (Mo. banc 2002). We presume

counsel acted professionally and that counsel’s actions were based on sound trial strategy.

Williams, 386 S.W.3d at 752. To overcome this presumption, Hogan must prove his claim for

 8
relief by a preponderance of the evidence. Rule 29.15(i); Brock v. State, 242 S.W.3d 430, 433 (Mo.

App. 2007).

 For Rule 29.15 claims alleging prejudice due to a failure to object to a verdict director in a

multiple acts case, “the ultimate determination … is whether defendant has suffered a genuine

deprivation of his right to effective assistance of counsel, such that this Court’s confidence in the

fairness of the proceeding is undermined.” Hoeber v. State, 488 S.W.3d 648, 657 (Mo. banc 2016)

(internal quotation marks and citation omitted).

 To prevail on a claim on ineffective assistance of appellate counsel, Hogan must show that

his counsel failed to raise a claim of error on appeal “so obvious that a competent and effective

lawyer would have recognized and asserted.” Meiners v. State, 540 S.W.3d 832, 836 (Mo. banc

2018) (internal quotation marks and citation omitted).

 Facts Alleged in Hogan’s Rule 29.15 Motion to Support Multiple Acts Claims

 To support his claim that evidence of “multiple acts” of sexual misconduct and indecent

exposure were presented at trial, Hogan alleged in his Rule 29.15 amended motion that, in A.P.’s

forensic interview, “A.P. said that Movant touched her genitals multiple times, used his penis to

penetrate her vagina one time, and that she saw his penis, all between May and July, 2015.” Hogan

further alleged that, after the children’s interviews he was interrogated by police and that, due to

“coercive pressure” he eventually said he touched A.P. and her sisters. He argued that, because

the jury acquitted him of all charges involving A.P.’s siblings, the jury believed his confession was

coerced and the jury must have based its findings of guilt as to A.P. on other evidence.

 Hogan presented the following trial evidence (excerpted from A.P.’s in-camera videotaped

victim deposition) to support his claim that the sexual misconduct and indecent exposure happened

multiple times within the charged time period:

 9
 [Prosecutor]: Whenever Maurice touched you with his – his privates or his hand,
 were his clothes on or off?

 [A.P.]: Off.

 [Prosecutor]: And who took his clothes off?

 [A.P.]: Him.

 [Prosecutor]: [A.P.], when he touched you with his hand, did he touch you on the
 inside of your privates or the outside?

 [A.P.]: Outside.

 [Prosecutor]: And when he touched you with his privates, was it on the inside or
 the outside?

 [A.P.]: Both.

 [Prosecutor]: Did this happen one time or more than one time?

 [A.P.]: More than one time.

 [Prosecutor]: Do you know how many times?

 [A.P.]: About, like, four.

 [Prosecutor]: Okay. Is that a guess?

 [A.P.]: Yeah. It was somewhere close to that number.

 [Prosecutor]: Okay. So more than once, but probably less than five; is that right?

 [A.P.]: Yeah.

 [Prosecutor]: Okay. Where were you when he touched you?

 [A.P.]: In my mom’s bedroom and one time in my bedroom.

 Hogan additionally included the following testimony from forensic interviewer Ashton

Eibel in his Rule 29.15 motion to support his claim that multiple acts of Hogan touching A.P.’s

genitals were presented at trial: “[A.P.] said, ‘There was a guy in our house named Maurice, but

 10
he’s not there anymore because he did something bad to me and my sisters. He played with parts

of my body more than one time.”’ Hogan quoted the following testimony by Eibel, which was

given immediately after Eibel testified that A.P. told Eibel that Hogan put his private part inside

A.P.’s private part, and that this occurred in A.P.’s mother’s bedroom on her mother’s bed. The

bolded portions below were excluded from Hogan’s motion:

 [Prosecutor]: Did she say if it happened one time or more than one time?

 [Eibel]: She stated this specific – in general the touching happened more than
 one time.

 [Prosecutor]: Okay. And specifically the defendant touching her privates with his
 finger, did she indicate if that happened once or more than once?

 [Eibel]: I think she stated that happened more than one time, yes.

 [Prosecutor]: Okay. And the defendant using his private to put it inside of her
 private, did she indicate if that was once or more than once?

 [Eibel]: She talked about one time. I’m not sure that – I can’t be certain
 that she stated that happened more than one time.

 [Prosecutor]: Okay. But she talked in detail about one specific time?

 [Eibel]: Correct, the last time.

 [Prosecutor]: Okay. And was she able to tell you when this happened?

 [Eibel]: Yes.

 [Prosecutor]: And when was that?

 [Eibel]: The last time she said occurred a couple of weeks ago [from the July
 15, 2015 interview].

 [Prosecutor]: And did she recall what happened the last time?

 [Eibel]: Yes.

 [Prosecutor]: Okay. And which time was that?

 11
 [Eibel]: The last time was the time that he put his private inside her private.

 [Prosecutor]: Was she able to tell you when the first time was?

 [Eibel]: Yes.

 [Prosecutor]: And when was that?

 [Eibel]: She said that it was a couple of months ago.

 [Prosecutor]: Okay. From the day that you were –

 [Eibel]: From the day that I spoke with her, yes.

Hogan also included in his motion the following excerpt from the State’s closing argument, which

Hogan alleged did not specify which act of genital touching the charge referenced:

 The time period. On or between May 1st, 2015, and July 15th, 2015. You heard
 these girls testify. You heard them in their Rainbow House interviews and what
 they said to Miss Eibel. They told you, each one of them, that this touching by the
 defendant started after [N.P.]'s birthday which was May 26th. And they told you
 that it happened as recently as July 7th, the day that [Mother] came home and kicked
 the defendant out. So, really, we’re looking at a time period between May 26th and
 July 7th. Falls into this time period. Check it off.

 …

 So how do we know that the defendant touched the genitals of [A.P.]? [A.P.] told
 us. You saw clips of that Rainbow House interview, and you heard Miss Eibel
 testify. You heard that [A.P.] said, "He told me to pull down my pants." Why did
 [A.P.] do it? She said, "Because my mom told me to always do what an adult says."
 An innocent explanation of a seven-year-old. She pulled down her pants and her
 underwear. And then she told you that the defendant used his finger, and she also
 showed you. He was going like this. She showed you on her leg. He was just
 swirling it around. She said that this happened in her apartment in Cole County. A
 year and a half later when she sat in this chair and testified again as to what
 happened, when asked what the defendant used to touch her private, she held up
 that same finger, said, "He used his finger." And how do we know where he touched
 her? She showed us when she circled a vagina on the anatomical drawing at her
 Rainbow House interview. Her word for that was private. And Ashton explained
 to you how she clarified what part of the body [A.P.] was talking about.

 12
 Point I: Instruction No. 83 – Child Molestation Involving Hand-to-Vagina Contact4

 In Hogan’s first point on appeal, he contends the motion court clearly erred in denying his

claim that trial counsel was ineffective for failing to object to Instruction No. 8 pursuant to Celis-

Garcia and Hoeber. Hogan’s amended Rule 29.15 argued that evidence of multiple acts of hand-

to-vagina contact, each of which would constitute the commission of the offense of child

molestation, were presented at Hogan’s trial and, despite this, the verdict director did not specify

a particular incident. Further, that his right to a unanimous verdict was violated at trial because

the only finding the jury was required to make was that the abuse happened at least once within

the charged time period, and “had the jury been required to unanimously agree as to a specific

incident (‘a couple of months ago’, ‘a couple of weeks ago’, etc.) and/or a specific location (‘in

my bedroom’, ‘in my mom’s bedroom’, etc.), there is a reasonable likelihood the jury would not

 3
 Instruction No. 8 provided:
 INSTRUCTION NO. 8

 As to Count Two, if you find and believe from the evidence beyond a reasonable doubt:

 First, that on or between May 1, 2015 and July 15, 2015, in the County of
 Cole, State of Missouri, the defendant touched the genitals of A.P., and

 Second, that he defendant did so for the purpose of gratifying defendant’s
 sexual desire, and

 Third, that A.P. was a child less than fourteen years old,

 then you will find the defendant guilty under Count Two of child molestation in the first degree.

 However, unless you find and believe from the evidence beyond a reasonable doubt each
 and all of these propositions, you must find the defendant not guilty of that offense.

 4
 Hogan combined in his amended Rule 29.15 motion his factual allegations and arguments regarding
counsels’ alleged ineffectiveness for failing to object to Instructions No. 8 and No. 11 at trial and/or raise unanimity
claims on appeal. We first address Points I and III which regard trial counsel, follow with Points II and IV which
regard appellate counsel, and conclude with Point V.

 13
have been able to unanimously agree.” Hogan argues on appeal that trial counsel’s ineffectiveness

prejudiced him because defense counsel highlighted the inconsistencies in A.P.’s testimony about

these incidents, and the jury’s verdict showed they did not find A.P. 100% credible, all resulting in

a lack of confidence in the reliability of the verdict. We find no clear error.

 The Missouri and federal constitutions require that a jury verdict in a criminal case

involving a serious offense be unanimous. MO. CONST. art I, § 22(a); U.S. Const. amend. VI;

Ramos v. Louisiana, 140 S.Ct. 1390 (2020). “For a jury verdict to be unanimous, the jurors must

be in substantial agreement as to the defendant’s acts, as a preliminary step to determining guilt.”

Celis-Garcia, 344 S.W.3d at 155 (internal quotation marks and citation omitted). The jury

unanimity issue is sometimes raised in “multiple acts” cases. Id. “A multiple acts case arises when

there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a

criminal charge, but the defendant is charged with those acts in a single count.” Id. at 155-56. In

Celis-Garcia, multiple, distinct acts of sodomy occurring in separately identifiable locations were

in evidence. 344 S.W.3d at 156.

 The Celis-Garcia court, however, made clear that it was not addressing factual scenarios

involving “repeated, identical sexual acts committed at the same location and during a short time

span” and where the victim may be “unable to distinguish sufficiently among the acts.” Id. at 157

n.8. Cases with such fact scenarios decided since Celis-Garcia have found that where the jurors

have no evidentiary basis to differentiate between repeated acts, the defendants’ right to a

unanimous verdict was not at risk of being violated by verdict directors that did not hone in on a

particular act. Walker, 549 S.W.3d at 12. Similarly, where there are no multiple, distinct acts

particularized in the evidence, it is not evident, obvious, or clear that the defendant’s right to a

 14
unanimous verdict is compromised by a failure to present a more specific verdict director to the

jury. State v. Adams, 571 S.W.3d 140, 152 (Mo. App. 2018).5

 We find that Hogan’s amended Rule 29.15 motion fails to show an evidentiary basis from

which multiple, distinct acts of hand-to-vagina contact could have been more particularized in the

verdict director thus requiring an objection from counsel. Hogan’s amended motion indicates that

Count II/Instruction No. 8 involved hand-to-vagina contact with Hogan’s hand and/or fingers

touching A.P.’s vagina. It is important to note that Hogan was charged separately for penis-to-

vagina contact which involved Hogan allegedly inserting his penis in A.P.’s vagina. The jury was

given a separate verdict director for that count.6 The distinctions between the charges involving

 5
 In any review for ineffective assistance of counsel, we begin with the strong presumption that counsel’s
conduct was reasonable and effective and “[t]o overcome this presumption, a movant must identify specific acts or
omissions of counsel that, in light of all the circumstances, fell outside the wide range of professional competent
assistance.” Anderson v. State, 564 S.W.3d 592, 600 (Mo banc 2018). Although trial counsel stated in Hogan’s Rule
29.15 hearing that he should have made a Celis-Garcia objection to the verdict directors at trial, Counsel provided no
explanation as to why he believed such an objection would have been successful on the particular facts of this case.
Counsel testified that he “vaguely” recalled that A.P. had stated that some allegations were in her bedroom while some
were in her mother’s bedroom, but had not gone back and put a tremendous amount of thought into the facts of the
case in preparation for the Rule 29.15 hearing. Appellate counsel’s testimony that she “missed” the Celis-Garcia
issue was also not fact-specific. We find these generic, post-trial/appeal proclamations that the case involved multiple
acts and, therefore, counsel had no strategy for not raising a Celis-Garcia issue not, by themselves, enough to rebut
the strong presumption that trial and appellate counsel acted with objective reasonableness in declining to raise the
issue.
 6
 A person commits the crime of child molestation in the first degree under Section 566.067, RSMo Cum.
Supp. 2006, “if he or she subjects another person who is less than fourteen years of age to sexual contact.” Pursuant
to Section 566.010, RSMo Cum. Supp. 2015, “Sexual Contact” is defined as “any touching of another person with the
genitals or any touching of the genitals or anus of another person, or the breast of a female person, or such touching
through the clothing, for the purpose of arousing or gratifying sexual desire of any person[.]” The MAI-CR 3d jury
instruction for child molestation in the first degree (320.17), followed in Hogan’s case, differentiates between a
defendant touching the victim’s genitals and the defendant touching the victim with the defendant’s genitals. Hogan
was charged with child molestation in the first degree for touching A.P.’s genitals. Hogan was separately charged
with statutory rape in the first degree for allegedly having “sexual intercourse” with A.P., defined as “any penetration,
however slight, of the female sex organ by the male sex organ, whether or not an emission results.” § 566.010(4),
RSMo 2006. The trial record is clear that, while with regard to the alleged penis-to-vagina contact A.P. was asked
about being “touched” by Hogan’s “privates,” the Count II child molestation charge and corresponding jury instruction
referenced hand-to-vagina contact; the Count I statutory rape charge and corresponding jury instruction referenced the
penis-to-vagina contact. There is no claim in Hogan’s Rule 29.15 motion or on appeal that the “multiple acts” alleged
to be in evidence associated with the child molestation verdict director involved penis-to-vagina contact – Hogan’s
claim only regards alleged “multiple acts” of hand-to-vagina contact.

 15
hand-to-vagina contact versus penis-to-vagina contact were explained to the jury. While A.P.’s

testimony, set forth above, discusses both together, her response that it happened “more than one

time,” “about, like, four,” and “in my mom’s bedroom and one time in my bedroom” all followed

the question, “And when he touched you with his privates, was it on the inside or the outside?”

Hence, there was no direct testimony from A.P. that the hand-to-vagina contact occurred more than

once or in different locations.

 Even if it can be inferred that the prosecutor was not solely referencing the penis-to-vagina

contact, but collectively encompassing the prosecutor’s prior questions regarding when Hogan also

allegedly touched A.P. with “his hand” when asking, “Okay. Where were you when he touched

you?”, A.P.’s response of, “in my mom’s bedroom and one time in my bedroom” still revealed no

multiple, distinct acts of hand-to-vagina contact. To the contrary, because penis-to-vagina contact

is encompassed in A.P.’s response, it is impossible to distinguish within this testimony the location

of any specific act of hand-to-vagina contact, or how many times hand-to-vagina contact occurred.

 Forensic interviewer Eibel’s testimony also evidences no multiple, distinct acts of hand-

to-vagina contact as she merely testified that she thought A.P. told her that the hand-to-vagina

contact happened more than one time. When describing a particular incident A.P. had reported to

her, Eibel testified to the “last time” which involved Hogan allegedly inserting his penis in A.P.’s

vagina.7 Neither Eibel nor A.P. ever testified to any specific incident of hand-to-vagina contact.

 7
 On appeal, Hogan draws additional inferences from Eibel’s testimony on cross-examination that he
contends support his claim that multiple, distinct acts of hand-to-vagina contact were in evidence. This additional
testimony was not specifically referenced in his amended Rule 29.15 motion and need not be addressed on appeal.
McLaughlin v. State, 378 S.W.3d 328, 340 (Mo. banc 2012). We note, nonetheless, that it is not clear from Eibel’s
testimony that when Eibel was asked, “So [A.P.] told you that Maurice had touched her; is that right?” that Eibel’s
responses solely regarded the allegations of Hogan touching A.P.’s vagina with his hand. Eibel testified that A.P.
reported that Hogan had “touched” A.P.’s vagina with both his hand and his penis.

 16
 Hogan’s amended Rule 29.15 motion, therefore, fails to prove that trial counsel was

ineffective for declining to raise an objection to Instruction No. 8. Hogan’s motion shows no

evidence of multiple, distinct acts of hand-to-vagina contact between Hogan and A.C. such as

would have necessitated a more particularized verdict director to protect Hogan’s right to a

unanimous verdict. Walker, 549 S.W.3d at 12. The motion court did not clearly err in concluding

that counsel was not ineffective for declining to raise an objection.

 Hogan’s first point on appeal is denied.

 Point III: Instruction No. 118 – Indecent Exposure by Exposure of Genitals

 In Hogan’s third point on appeal, he contends that the motion court clearly erred in denying

his claim that trial counsel was ineffective to his prejudice for failing to object to Instruction No.

11, arguing the instruction failed to specify a particular incident of sexual misconduct involving a

 8
 Instruction No. 11 provided:

 INSTRUCTION NO. 11

 As to Count Five, if you find and believe from the evidence beyond a reasonable doubt:

 First, that on or between May 1, 2015 and July 15, 2015, in the County of
 Cole, State of Missouri, the defendant knowingly exposed his genitals to A.P.,
 and

 Second, that he defendant did so for the purpose of gratifying the sexual
 desire of defendant, and

 Third, that at that time A.P. was 7 years old, and

 Fourth, that defendant knew A.P. was less than fifteen years of age,

 then you will find the defendant guilty under Count Five of sexual misconduct involving a child by
 indecent exposure.

 However, unless you find and believe from the evidence beyond a reasonable doubt each
 and all of these propositions, you must find the defendant not guilty of that offense.

 17
child by indecent exposure in Count V, although the State presented evidence of multiple acts of

Hogan exposing his genitals to A.P., thereby allowing for the possibility that the jurors failed to

unanimously find him guilty of the same incident.

 Hogan’s amended Rule 29.15 motion combined the facts and arguments for his claim

regarding Instruction No. 11 (Count V) with his claim regarding Instruction No. 8 (Count II). He

stated, however, that while his argument was primarily focused on Count II and there was not as

much trial testimony regarding Count V, “A.P. specifically stated that Movant’s clothes were off

during the four occasions of hand-to-vagina touching,” suggesting that various acts of indecent

exposure occurred during the incidents of hand-to-vagina touching.

 We first note that, forensic interviewer Eibel testified to a statement made by A.P. wherein

A.P. described in detail her observation of Hogan’s penis during an incident where A.P. alleged

Hogan put his penis in her vagina. Eibel was asked, “And did she describe what the defendant did

with his penis?” Eibel responded,

 She stated that she was on the edge of her mother’s bed, the front of the bed;
 and that he bent his private downward. And in the interview, she actually said he
 positioned it to go inside of her private part. And she remembers at that time that
 it was sticking up.

Eibel testified that she could not be certain that A.P. stated that it happened more than one time,

and that A.P. talked in detail about this specific time. Eibel asked A.P. to describe what Hogan’s

private part looked like, and A.P. stated that it was a weird shape. Eibel asked A.P. to draw it for

her. This drawing was admitted into evidence. In A.P.’s in-camera videotaped deposition

testimony, A.P. was asked on cross-examination, “And you saw his private one time, didn’t you?”

A.P. responded, “Yes.”

 18
 Although this appears to be the only evidence in the record where A.P. describes observing

Hogan’s genitals, the only instance that is particularized with regard to time and place, and the

only instance discussed by the State at trial to argue that the trial evidence supported conviction

on the indecent exposure charge, Hogan completely ignores this evidence in his amended Rule

29.15 motion and instead suggests that the indecent exposure conviction resulted from when A.P.

discussed that Hogan’s clothes were off during times Hogan touched her vagina with his hand.9

 As discussed above, the hand-to-vagina contact was discussed along with the penis-to-

vagina contact at trial, and the alleged multiple hand-to-vagina contacts cannot be distinguished

by time, place, location, or in any other manner. As Hogan’s claim in his Rule 29.15 motion

regarding Instruction No. 11 is that A.P. observed Hogan’s genitals during the alleged multiple

hand-to-vagina contacts, and we determined in Hogan’s first point on appeal that the evidence did

not require a more particularized verdict director for Count II, we find that the motion court did

not clearly err in concluding that Hogan failed to prove counsel was ineffective by not objecting

to Instruction No. 11. Moreover, as the incident of A.P. describing Hogan’s penis as sticking up

prior to Hogan allegedly placing it in her vagina is the only distinct instance of indecent exposure

in the record, and the verdict director sufficiently encompasses this incident, we find no reasonable

probability that the verdict director misled or misdirected the jury in such a way that undermines

this court’s confidence in the verdict. See Adams, 571 S.W.3d at 150-151.

 9
 On appeal, Hogan briefly mentions this evidence and appears to suggest that this evidence, along with the
evidence regarding the hand-to-vagina contact, reveals multiple acts of indecent exposure. As this argument was not
made to the motion court, we need not consider it. McLaughlin, 378 S.W.3d at 340 (“In actions under Rule 29.15,
any allegations or issues that are not raised in the Rule 29.15 motion are waived on appeal. Pleading defects cannot
be remedied by the presentation of evidence and refinement of a claim on appeal.” (internal quotation marks and
citations omitted)). Hogan did not address in his reply brief the State’s assertion that A.P. observing Hogan’s penis
prior to him allegedly inserting it in her vagina is the only distinct incident of sexual misconduct by indecent exposure
in evidence.

 19
 Point III is denied.

 Points II and IV: Ineffective Assistance of Appellate Counsel

 In Hogan’s second point on appeal, he contends the motion court clearly erred in denying

his claim that appellate counsel was ineffective to his prejudice for failing to raise a claim

challenging the trial court’s submission of Instruction No. 8, arguing that the instruction failed to

specify a particular incident of Hogan touching A.P.’s genitals in Count II, although the State

presented evidence of multiple acts of Hogan touching A.P.’s genitals, thereby allowing for the

possibility that the jurors failed to unanimously find him guilty of the same incident. In Hogan’s

fourth point on appeal, he contends the motion court clearly erred in denying his claim that

appellate counsel was ineffective to his prejudice for failing to raise a claim challenging the trial

court’s submission of Instruction No. 11, arguing the instruction failed to specify a particular

incident of indecent exposure to A.P. for Count V, although the State presented evidence of multiple

acts of Hogan exposing his genitals to A.P., thereby allowing for the possibility that the jurors

failed to unanimously find him guilty of the same incident.

 Because we have determined that more particularized verdict directors were not required

by the evidence at trial for Counts II and V (Instructions No. 8 and No. 11, respectively) to ensure

jury unanimity, appellate counsel was not ineffective for failing to raise unanimity claims on direct

appeal. Hosier v. State, 593 S.W.3d 75, 87 (Mo. banc 2019). The motion court did not clearly err

in denying Hogan’s claims regarding ineffective assistance of appellate counsel.

 Points II and IV are denied.

 Point V: Trial Counsel’s Failure to Object to “Vouching” Testimony

 In Hogan’s fifth point on appeal, Hogan contends that the motion court clearly erred in

denying Hogan’s claim in his amended Rule 29.15 motion that trial counsel was ineffective to his

 20
prejudice for failing to object to Ashton Eibel’s improper “vouching” testimony during the State’s

publication of portions of A.P.’s forensic interview. Hogan contends that a reasonably competent

attorney would have objected to Eibel’s testimony, which invaded the province of the jury, was

more prejudicial than probative, and was improperly used to bolster A.P.’s credibility.

 In Hogan’s amended Rule 29.15 motion, he contended that Eibel provided commentary

during the publication of Exhibit 7A (a forensic interview of A.P. conducted by Eibel), stating that

A.P.’s use of “spontaneous gestures” and “unconscious gesture[s]”, “sensory detail”,

“idiosyncratic details”, and body language made clear that she was truly recounting what happened

from her “free recall memory”, which was “significant” and “noteworthy” to the interviewer.

Hogan alleged that Eibel testified that it was significant because “[s]he’s remembering how it

occurred” as evidenced by “significant contextual details.” Further, that when A.P. described how

Hogan “bent [his penis] downward”, “[t]hat’s considered idiosyncratic detail. In a forensic

interview when children are able to give those details, it’s – it’s noteworthy.” Hogan alleged that

Eibel testified, “She gave a lot of details … without much prompting from me and, you know, how

things felt”, which was “sensory detail.”

 Hogan argued that he was found guilty of only two counts involving A.P., and this was the

only part of the State’s case that differed from the cases involving A.P.’s sisters, “which could

explain the contrasting verdicts.” Hogan argued that the jurors likely believed something happened

to A.P. and not the other girls based on A.P.’s use of detail in describing events, as bolstered by

Eibel.

 The motion court found that trial counsel admitted that Eibel did not directly vouch for

A.P.’s credibility, and that because the jury had the opportunity to view the taped forensic interview

of A.P. and personally assess A.P.’s credibility, counsel’s decision to not object to Eibel’s testimony

 21
was reasonable. The motion court also found that, even if trial counsel should have objected to

Eibel’s testimony, counsel’s failure to do so did not prejudice Hogan by creating a reasonable

probability of a different outcome.

 We find that, even if trial counsel could be deemed ineffective for not objecting to Eibel’s

testimony, Hogan fails to show prejudice. Hogan contends that he was found guilty of only two

counts involving A.P., and not guilty of the counts involving A.P.’s sisters, and “this was the only

part of the State’s case where A.P. stood out from the other girls, which could explain the

contrasting verdicts.” He contends, therefore, that this shows that Eibel’s testimony was influential

and, therefore, prejudicial.

 We do not know how the jury reached its determinations with regard to each of the counts,

but note that, although no portions of Eibel’s interviews with N.P. and M.P. were shown to the jury,

Eibel still testified to the content of those interviews and was asked questions about N.P.’s and

M.P.’s performance during the interview process. Eibel was asked if she engaged in “narrative

practice” with N.P. in the introductory phases of her interview and was asked, “And how did she

do with that?” Eibel responded, “Very well. She provided a lot of detail about neutral events.”

Eibel then testified that N.P. stated in the interview that Hogan had touched her vagina, and that

N.P. had explained when it first occurred (May 2015) and when it last occurred (June 2015).

 In N.P.’s in-camera videotaped deposition testimony, however, N.P. stated that the alleged

molestation occurred in March of 2015. The verdict director for Count III of child molestation in

the first degree, which encompassed the allegation that Hogan touched N.P.’s genitals, required

the jury to find that the molestation occurred between May 1, 2015 and July 15, 2015. Despite

Eibel making positive comments about N.P.’s performance in the forensic interview, and despite

Eibel testifying that N.P. told Eibel that Hogan molested her between the months of May and July

 22
as set forth in the verdict director, the jury returned a not guilty verdict. N.P.’s trial testimony, that

the molestation occurred in March, did not support the allegations in the verdict director and could

have alone been the reason for the jury’s verdict. Whatever the reason, Hogan’s claim on appeal

that the not guilty verdict on the count involving N.P. evidences that the jury was unduly influenced

by Eibel on the counts regarding A.P. is not an inferential leap that can be made by the record.

Eibel’s testimony supported a guilty verdict on the count involving N.P. as well.

 Hogan also does not explain why, if the jury was unduly influenced by Eibel as related to

A.P., the jury returned a not guilty verdict on the statutory rape charge regarding A.P. Eibel testified

that A.P. told Eibel that Hogan inserted his penis in her vagina, and described in detail what A.P.

reported to her. The jury also saw portions of Eibel’s videotaped interview with A.P. Yet, while

A.P. also testified in-camera that Hogan touched her privates with his penis on the “inside,” in

cross-examination defense counsel reminded A.P. of her prior deposition testimony that Hogan’s

private never went inside of her body. A.P. then testified that she could not remember anything

from the prior week. The defense read A.P.’s deposition testimony into evidence at trial. A.P. was

asked in that deposition, “Did his private go inside of your body?” A.P. responded, “No.” A.P.

continued to deny in follow-up questions that Hogan had ever inserted his penis into her vagina.

 A.P.’s deposition testimony, therefore, was clearly inconsistent with her interview

 23
statements to Eibel. As with the other not guilty verdicts,10 the jury’s verdict on the statutory rape

charge regarding A.P. does not support Hogan’s claim on appeal that the jury was unduly

influenced by Eibel “vouching” for A.P.’s credibility in the interview. Eibel’s testimony, and A.P.’s

interview statements, supported a guilty verdict on the statutory rape charge.11

 Viewing the record as a whole, it appears that where there were evidentiary inconsistencies,

the jury declined to convict. On the counts the jury entered guilty verdicts – child molestation of

A.P. by Hogan touching A.P.’s genitals and indecent exposure by Hogan exposing his genitals to

A.P. -- there were no evidentiary inconsistencies. Significantly, A.P. was the only child for whom

the State showed portions of Eibel’s interview to the jury. The jury was able to assess for itself

how A.P. reacted to Eibel’s questions and how credible her responses appeared. The jury was then

able to compare A.P.’s forensic interview responses with her in-camera videotaped deposition

testimony. The jury was unable to make these comparisons for N.P. and M.P., as the jury never

saw portions of Eibel’s interviews with these children; the jury only saw the in-camera videotaped

deposition testimony of these children which conflicted with Eibel’s testimony regarding what

 10
 With regard to the charge alleging child molestation of M.P., Eibel testified that M.P. told her that Hogan
touched her private part with his hand while M.P.’s clothes and underwear were down, and that the incidents occurred
in the living room and her mother’s room. M.P. told Eibel that it hurt a lot and that there was a sharp pain in her
private part. In M.P.’s in-camera videotaped deposition testimony, M.P. testified that Hogan touched her on her
private with his hand while her clothes were on and that she was wearing underwear and pants. She stated that this
happened once, in her bedroom, and Hogan was also wearing clothes. On cross-examination, M.P. testified that Hogan
never put anything inside of her body, and that Hogan never did anything to hurt her. Given this conflicting testimony,
the jury could have simply determined that the inconsistencies in M.P.’s reports raised reasonable doubt as to whether
Hogan touched M.P.’s genitals for the purpose of gratifying his sexual desire. Hogan argued to the jury that the
children’s inconsistencies amounted to reasonable doubt. But, irrespective of the reason for the not guilty verdict on
the child molestation charge regarding M.P., the verdict cannot support Hogan’s claim that Eibel’s testimony was the
differentiating factor between the guilty and not guilty verdicts where Eibel’s testimony supported a guilty verdict on
this count too.
 11
 In closing, defense counsel argued that the State said that A.P. reported that Hogan’s “private went inside
her private hole” but that those were Eibel’s words and not A.P.’s. We note that, in closing argument, the prosecution
made no reference to the challenged aspect of Eibel’s testimony.

 24
they allegedly reported to her. Regardless, Hogan’s claim that improper “vouching” for A.P. is the

only explanation for the jury convicting him on only two of the five charges is simply not borne

out in the record. Hogan, therefore, fails to show that, even if counsel was ineffective in failing to

object to Eibel’s testimony, he was thereby prejudiced.

 We find that the motion court did not clearly err in concluding that Hogan was not

prejudiced by counsel declining to object during Eibel’s testimony.

 Point V is denied.

 Conclusion

 The motion court’s Judgment is affirmed.

 Anthony Rex Gabbert, Judge

All concur.

 25