Zel M. Fischer, Judge,
dissenting.
I respectfully dissent. The principal opinion, in holding that the motion court was clearly erroneous, in concluding that trial counsel was not ineffective for failing to object to the non-specific verdict directors, fails to give due consideration to the circumstances then before the defense and fails to apply a presumption of reasonableness to counsel’s conduct. Because the defense’s overall trial strategy was furthered by the non-specific verdict directors, and because the risk of non-unanimous verdicts was low from the defense’s perspective, trial counsel’s failure to object to the non-specific verdict directors was a reasonable trial strategy.[1]
“To be entitled to post-conviction relief for ineffective assistance óf counsel, a mov-ant must show by a preponderance of the evidence that his or her trial counsel failed to meet the Strickland test in order to prove his or her claims.” Johnson v. State, 406 S.W.3d 892, 898 (Mo. banc 2018). Under the first prong of the Strickland test, the movant must show “his or her *661 counsel failed to exercise the level of skill and diligence that a reasonably competent counsel would in a similar situation.” Id. at 898-99 (emphasis added). That is, “a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel’s challenged conduct on the facts of the particular case, viewed as of the time of counsel’s conduct.” Strickland v. Washington, 466 U.S. 668, 690, 104 S.Ct. 2062, 80 L.Ed.2d 674 (1984) (emphasis added). As further explained by the United States Supreme Court:
Judicial scrutiny of counsel’s performance must be highly deferential. It is all too tempting for' a defendant to second-guess counsel’s assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel’s defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable, A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time. Because of the difficulties inherent in making the evaluation, a court must, indulge a strong presumption that, counsel’s conduct,falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action “might be considered sound trial strategy.” There are countless ways to provide effective assistance in any given cáse. Even the best criminal defense attorneys would not defend a particular client in the same way. ■
Id. at 689,104 S.Ct. 2062 (internal citations omitted) (emphasis added). Accordingly, it is the rare case that’ a reviewing court should find the presumption of reasonableness has been overcome. This is not one of those cases.
Here, there were two categories of evidence against Hoeber: (1) S.M’s statements, which consisted of her testimony at trial, a video interview with police, and out-of-court statements purportedly made tó her mother and a child therapist, and (2) Hoeber’s' confession to police. Not surprisingly, S.M., who was only four years old at the time of the out-of-court statements and only six years old at the time of trial, gave statements that were contradictory as to the room in which the inappropriate touching took place,[2] that failed to provide a logical timeframe as to when the touching took place, that failed to establish on how many occasions the touching took place, and that were even contradictory as to whether Hoeber touched her. In contrast, Hoeber’s confession to police, the very words of the adult defendant, was quite clear in detail. Hoeber admitted to touching S.M. inappropriately on two occá-sions, He identified the'room where the touching took place (the bathroom), and he identified the general timeframe (about a month before he was arrested in August 2007).
Given the nature of this evidence, Hoe-ber’s confession was undoubtedly the State’s strongest evidence and the primary basis for charging Hoeber with two counts of first-degree statutory sodomy. And, given this dichotomy of the evidence, Hoe- *662 ber’s counsel employed a reasonable strategy at trial. While counsel did perhaps the best he could with Hoeber’s confession (attempting 'to show it was coerced by police), he of course wanted the jury’s primary focus to be on the weaker evidence, S.M.’s statements, which were ripe to be picked apart based on credibility concerns. The infirmities in S.M.’s statements were the best vehicle to sow reasonable doubt in the minds of the jurors. That is, if the jury focused on this weaker evidence, there was not only a possibility that the jury would disbelieve S.M.’s testimony and purported out-of-court statements but also a possibility that — because this evidence did not add up — the jury would consequently conclude there was reasonable doubt regarding the veracity of Hoeber’s confession. That this was clearly counsel’s overall trial strategy, as reflected in the trial transcript, was further confirmed by trial counsel’s testimony at Hoe-ber’s postconviction hearing.
Because counsel wanted the jury to focus on S.M.’s statements, it was perfectly reasonable and consistent with the overall trial strategy not to insist that the verdict directors specify a room where the touching took place.[3] As discussed, Hoeber’s confession identified only one room, the bathroom. With S.M.’s statements, the bathroom was referenced only once, and that was through the testimony of the-child therapist. It was the other rooms, particularly the kitchen and bedroom, that were at the center of S.M.’s statements.
The kitchen was identified in S.M.’s testimony, the mother’s testimony, and the child therapist’s testimony, while'the bedroom was identified in S.M.’s video interview with police, the mother’s testimony, and the child therapist’s testimony. Consequently, the identity of the room was tied .up with the category of evidence. The bathroom was associated with Hoeber’s confession; the other rooms were associated with S.M.’s statements. Without specifying a room, the verdict directors did not focus the jury’s attention on an associated category of evidence either way, i.e., the verdict directors did not prompt the jury toward' either Hoeber’s confession or S.M.’s statements. The non-specific verdict directors, therefore, left open the possibility that jury deliberations would center around S.M.’s statements, exactly what the defense wanted.
However, this possibility would have been effectively foreclosed by specific verdict directors. If counsel had insisted'on specifying a room -in the verdict directors, theré were two scenarios: (1-) as the principal opinion points out',- the State could have elected to' specify one room for each of the verdict directors, or (2) as the State argues, there could have been eight possible alternative verdict directors — four for each count,' with a different verdict director for each possible room (bathroom, kitchen, bedroom, and living room). Of course, under the first scenario, the State would have elected to specify the bathroom *663 in the verdict directors, because the backbone of the State’s evidence, Hoeber’s confession, identified that Hoeber touched S.M. twice (once for each count), specifically in the bathroom, and specifically within the timeframe given in the verdict directors, between July 1, 2007, and August 29, 2007. Choosing to specify any room over the. bathroom would have been illogical for the State, as the State then would have been relying on its weaker evidence. Under the first scenario, the jury’s focus would have certainly been shifted to Hoe-ber’s confession — exactly what reasonable defense counsel would .not have wanted under the circumstances.
The second scenario would not have been any better for Hoeber. The principal opinion dismisses the argument that having four alternative verdict directors for each count would have necessarily been bad for the defense because it would have reminded the jury of just how many bad acts were alleged. .While that would have been a reasonable consideration for the defense, it is not the only one. - With alternative verdict directors, there would have been one verdict director for each count that specified the bathroom and necessarily focused the jury’s attention on Hoeber’s confession. Moreover, acting reasonably and relying on its strongest evidence, the State would have insisted that the verdict director specifying the bathroom be the first verdict director for each count, prompting the jury to Hoeber’s confession right out of the gate. Again, this is exactly what reasonable defense' counsel would not have wanted under the circumstances.
Although specific verdict directors,, under both scenarios, would have better ensured unanimous verdicts, this would have come at the price of undermining the defense’s overall trial strategy by unduly shifting the jury’s focus to the State’s strongest evidence — Hoeber’s confession. Moreover, evaluated “from counsel’s perspective at the time” and “considering all the circumstances,” see Strickland, 466 U.S. at 688-89, 104 S.Ct. 2052, any risk of non-unanimous verdicts likely, and reasonably, appeared remote to the defense. Such a conclusion flows from the dichotomy of the evidence — the defendant’s own detailed confession versus the contradictory, and at times nonsensical, statements of a very young child. Assuming a conviction by reasonable jurors, if a particular juror did. not believe S.M.’s statements, his or her guilty vote would have been based solely on Hoeber’s confession. But the opposite does not follow. If a different juror did believe S.M.’s statements, it seems rather unlikely that his or her guilty vote would have been based solely on S.M.’s statements — that is, if the juror believed S.M.’s statements, he or she would have little reason to doubt the veracity of Hoeber’s confession. Accordingly, it was reasonable under the circumstances to conclude that if Hoeber were to be convicted, it was almost certainly going to be because all jurors believed Hoeber’s confession.[4] In this way, it was objectively reasonable for counsel to act in furtherance of the defense’s overall trial strategy, rather than act out of concern for possible non-unanimous verdicts.
Therefore, contrary to the principal opinion’s assumption, it does not follow “that no reasonable trial strategy existed *664 for failing to object to the non-specific verdict directors.” Any importance placed on unanimous verdicts in general is not dispositive of whether counsel provided reasonably effective assistance in this particular case, under these particular circumstances. See, e.g., Love, 670 S.W.2d at 503 (rejecting the argument that counsel was ineffective for failing to raise the omission of an instruction in a motion for a new trial simply because the “instruction was required by the then applicable law” and, instead, concluding “that ,a reasonable attorney could have decided [the] instruction would have been detrimental to his client”). The principal opinion fails to adhere to basic tenets of ineffectiveness analysis, that there is a presumption of reasonableness and that “[t]here are countless ways to provide effective assistance in any given case.” Strickland, 466 U.S. at 689, 104 S.Ct. 2052. Although one way to provide effective assistance in this case may have been to eliminate any risk of non-unanimous verdicts, another — and in my view better — way to provide effective assistance under the circumstances was to not insist on specific verdict directors, so as to not focus jury deliberations on Hoe-ber’s own damning confession. While the principal opinion may endorse a strategy that puts 'the protection of unanimous verdicts first and foremost, it unduly narrows consideration of the likely original trial outcome and outcome on remand. '
It is also worth noting that the principal opinion’s shoehorning of Celis-Gareia’s principles into the postconviction relief context opens the door even further for prisoners to- make matters considerably worse for. themselves in ,the pursuit. of postconviction relief, a result entirely foreseeable based on the ultimate resolution of Celis-Gareia itself. See State v. Ess, 453 S.W.3d 196, 214 n.6 (Mo. banc 2015) (Wilson, J., concurring in part.and dissenting in part) (“[I]t will never be known whether the decision not to object to the state’s instructions in Celis-Gareia was a matter of trial strategy even though the subsequent history of that case shows such a strategy would not have been unreasonable.”). In State v. Celis-Gareia, a direct appeal case, this Court reversed and remanded for a new trial on plain error review after the State broadly charged the defendant with only two counts of first-degree statutory sodomy but presented evidence of numerous acts that could have served as the basis for each criminal charge. 344 S.W.3d 150, 154-56 (Mo. banc 2011).' The defendant was originally convicted of both counts of first-degree statutory sodomy and sentenced to two concurrent 25-year sentences. Id. at 154. On remand, however, the State added new charges to match the numerous acts that had been alleged at trial but not specifically instructed on, and the defendant was subsequently convicted of 10 counts of first-degree statutory sodomy (each carrying a life sentence), six counts of first-degree child molestation (each carrying a 15-year sentence), and one' count of first-degree statutory rape (also carrying á life sentence). State v. Celis-Garcia, 420 S.W.3d 723, 725 (Mo.App.2014). These convictions, after taking into account the concurrent or consecutive nature of the individual sentences, resulted in three consecutive life sentences plus 30 years. Id. Likewise, the State here is not precluded from adding charges after remand.' Under the principal opinion’s analysis and result, the State is incentivized to amend the charges on remand to include all versions of facts contained in the record, which trial counsel undoubtedly knew, and knows, is not in Hoeber’s best interest.
These repercussions aside, this Court should not merely' acknowledge the Supreme Court’s directives in ineffectiveness analysis but actually follow them and find *665 counsel to have been effective in all but the rarest of cases. A reviewing court’s mere disagreement with counsel's trial strategy-does not render counsel’s assistance ineffective; not only is there a presumption of reasonableness, but due deference and due consideration of the circumstances of the case also should be given, and a wide latitude of what constitutes. “reasonable” should be applied. In my view, after reviewing the trial transcript and motion hearing transcript, Hoeber has not overcome the presumption that trial counsel acted reasonably because counsel’s conduct “falls within the wide range of reasonable professional assistance; that is ... the challenged action ‘might be considered sound trial strategy.’” Strickland, 466 U.S. at 689, 104 S.Ct. 2052 (emphasis ádd-ed). Í, therefore, dissent, and I would not subject Hoeber to the risk of additional charges.

. At trial, S.M. testified that the touching occurred only in the. kitchen, and not in the bedroom, living room, or bathroom. In out-of-court statements made to her mother, S.M. said the touching occurred in the kitchen and bedroom. In out-of-court statements made to a child therapist, S.M. identified, at varying times, the kitchen, bedroom, living room, and bathroom as rooms where the touching occurred.

. It is immaterial that, at Hoeber’s postcon-viction hearing, counsel testified that his failure to object to the verdict directors was not based on trial strategy. Criminal defendants are guaranteed objectively effective assistance of counsel, not subjectively effective assistance of counsel; the question is whether counsel's conduct was objectively reasonable, not whether counsel subjectively believed his conduct was reasonable. See, e.g., Strickland, 466 TJ.S. at 688, 104 S.Ct. 2052; Lovev. State, 670 S.W.2d 499, 502 (Mo.'.banc 1984): Additionally, despite an ethical obligation to testify truthfully to the motion court, see Rule 4-3.3(a)(1), a defendant’s trial counsel occasionally provides testimony that facilitates a finding that he or she provided ineffective assistance of counsel. This Court has previously directed the Office of Chief Disciplinary ■ Counsel to investigate counsel’s competency when there is a published opinion finding ineffective assistance of counsel.

. Given these circumstances, it is also understandable that the motion court- chose to skip to the second prong of the Strickland test and specifically address prejudice. See Taylor v. • State, 382 S.W.3d 78, 81 (Mo. banc 2012) ("The court may not need to address both prongs if the movant has failed to make a sufficient showing on one. If the ineffectiveness claim can be disposed of because of lack of sufficient prejudice, that course should be followed.”) (internal citation omitted).