

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | |
|---|---|
| STATE OF MISSOURI, | ) |
| | ) |
| Respondent, | )    **WD84784** |
| v. | ) |
| | )    **OPINION FILED:** |
| | )    **March 7, 2023** |
| RICHARD LEON KERKSIEK, | ) |
| | ) |
| Appellant. | ) |

**Appeal from the Circuit Court of Johnson County, Missouri
The Honorable R. Michael Wagner, Judge**

**Before Division Two:** Edward R. Ardini, Jr., Presiding Judge, and
Lisa White Hardwick and Karen King Mitchell, Judges

Richard Kerksiek appeals, following a jury trial, his convictions in Johnson County of first-degree statutory sodomy, § 566.062,[1] and incest, § 568.020, for which he was sentenced by the court as a persistent offender to consecutive terms of twenty years and seven years, respectively, in the Department of Corrections. Kerksiek raises three claims on appeal. First, he argues that the trial court abused its discretion in excluding his father as a defense witness in response to a discovery violation. In his second and

---

[1] All statutory citations are to the Revised Statutes of Missouri, as updated through the 2018 Supplement.

third points, he argues that the court plainly erred in submitting Instructions 6 and 7 (the verdict directors) because neither included an allegation that the charged acts occurred in Johnson County. His second point claims that the omission resulted in a fatal variance between the information and the instruction insofar as the information alleged the conduct occurred in Johnson County while the verdict directors alleged only that it occurred in the State of Missouri. And his third point argues that the omission allowed the jury to convict him of uncharged crimes insofar as there was evidence that he committed the same acts in Morgan County as well, and the omission in the instructions left the jury without guidance as to which acts it was to consider. Finding no error, we affirm.

## Background[2]

In March of 2019, Kerksiek and Victim (his daughter) lived with Kerksiek's girlfriend in Warrensburg, Missouri, located in Johnson County. Victim was nine years old at the time. One night near the beginning of March, Kerksiek had been drinking beer before Victim went to bed. Sometime during the night, Kerksiek entered Victim's bedroom, woke Victim, and told her to flip onto her stomach. Kerksiek then removed Victim's shorts and tank top and inserted his penis into her anus. When he stopped, he used a towel to wipe a white liquid off of Victim's back and bottom; he then instructed

---

[2] On appeal, "[w]e view the evidence and all reasonable inferences in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." *State v. Madrigal*, 652 S.W.3d 758, 766 (Mo. App. E.D. 2022).

Victim to change clothes and give him the clothes she had been wearing before he came into her room. Kerksiek later burned the clothes Victim had been wearing.

Kerksiek and Girlfriend broke up near the end of March when she discovered he had been sending pictures of his penis to other women. Kerksiek and Victim then moved to Stover, Missouri, located in Morgan County, where they lived with Kerksiek's stepfather and Stepfather's girlfriend Shelly Hicks. Shortly after moving to Stover, Victim told Hicks what Kerksiek had done. Hicks did not believe Victim and demanded to know how big Kerksiek's penis was if Victim had seen it. After Victim indicated the size to Hicks, Hicks told Victim that, as a result of her allegations, Victim would have "to go to the doctor and have something stuck down her and something stuck up her." After Kerksiek got home, Hicks confronted him in front of Victim. Kerksiek immediately collapsed to the ground, and Hicks moved him to a bed and gave him oxygen. Victim became scared, believing that her accusation had hurt Kerksiek, so she recanted her allegations to Hicks.

On May 2, 2019, however, Victim disclosed to a school counselor what Kerksiek had done, and Victim indicated that she had earlier lied to Hicks about Kerksiek not doing it. Victim also said that, after she recanted, Hicks gave her a bicycle.

After Victim's disclosure to the school counselor, subsequent investigation revealed that Kerksiek engaged in the same conduct with Victim at the house in Stover. Victim also revealed that she had a laptop to use at the Warrensburg house, and she would frequently find inappropriate videos or images on it after Kerksiek had used it. Forensic investigation of the computer showed a search history including terms like,

3

"daddy having sex with daughter, daughter plus sex, incest," "[f]ather fucks daughter,"
"cream pie father and daughter," "my little daughter sex," "sex for kids," "underage sex,"
"real teen girls," "little daughter," "real incest," "underage sex," and "girl boobies
pictures," among others. Most of those searches occurred late at night after 11:00 p.m.;
Victim normally went to bed at 8:00 p.m. on weekdays and 10:00 p.m. on weekends.

Kerksiek was charged in both Johnson and Morgan Counties with first-degree
statutory sodomy and incest. Before trial, the State filed two requests for disclosure
under Rule 25.05,[3] seeking "[t]he names and last known addresses of persons, other than
the defendant, whom defendant intends to call as witnesses at any hearing or at the trial."
Kerksiek did not respond to either request, so the day before trial, the State filed a motion
to exclude any defense witnesses as a sanction for Kerksiek's discovery violation. The
trial court overruled the State's motion with two caveats: (1) Kerksiek was to provide the
list of witnesses immediately to the State so as to allow time for the State to interview
them, and (2) the court would grant the State a continuance if requested. After the State
rested, it renewed its motion to exclude Kerksiek's witnesses Vanessa McCroy and
Debbie Ritchie (Kerksiek's mother). The court sustained the State's objection generally
but did allow the witnesses to testify to very specific issues directed at Victim's
credibility.

During the defense case, McCroy refuted earlier testimony indicating that Victim
had disclosed to her, and Ritchie testified that, after the incidents, she had witnessed

---

[3] All rule references are to the Missouri Supreme Court Rules (2021).

Victim at a funeral approach Kerksiek and give him a hug and kiss. Kerksiek also testified in his own defense. Kerksiek denied doing anything inappropriate to Victim and blamed Victim for the inappropriate search history on the laptop, suggesting that she had been responsible for the searches.

At the close of Kerksiek's case, but before resting, defense counsel asked to approach the bench; there, he advised the court that, despite counsel not endorsing or intending to call the witness, Kerksiek insisted that counsel present testimony from Kerksiek's father Richard Rogers:

> Judge, I didn't have any—I never had any intent on calling this next person, I mean, didn't endorse them, I know the State endorsed them. His name is Richard Rogers, he is his father. I am not quite—I have spoken with him in the past, I have told him I did not need him and I have discussed that with my client this morning and he wasn't even here this morning and this morning my client says, Well, I really want him to testify. I am going to make a guess there is an objection coming, which I would not at all blame the State for.

As anticipated, the State objected and the court indicated its inclination to sustain the objection. Defense counsel indicated that Rogers would testify that he briefly lived with Kerksiek and Victim in Warrensburg and recalled Victim getting in trouble for looking at pornography on her computer. The State argued that Rogers was a surprise witness, that the request was far too late, and that the State lacked time to interview Rogers and investigate the veracity of his proposed testimony. Defense counsel argued that Rogers could not have been a surprise to the State:

> [Defense Counsel]: I will say they were already endorsed by the State, each one, and I think generally in discovery you have the right to call anybody to the stand that is endorsed by the State and disclosed.

[Prosecutor]: And you are very well aware that he was—his name is in a report, that is why he has to be endorsed, but he was never talked to or I didn't know anything about what he was going to say. He was mentioned in a report. We don't even have an address for him.

The court allowed defense counsel to make an offer of proof but refused to allow Rogers to testify because "it is really not fair at this late in the game."

The jury found Kerksiek guilty as charged, and the court sentenced him, as a persistent offender to consecutive terms of twenty years for sodomy and seven years for incest. Kerksiek appeals.

## Analysis

Kerksiek presents three claims on appeal. First, he argues that the trial court abused its discretion in excluding defense witness Rogers as a sanction for a discovery violation. In his second and third points, he argues that the court plainly erred in submitting the verdict-directing instructions without an allegation that the charged conduct occurred in Johnson County because (1) it created a fatal variance from the information's allegation that the charged conduct occurred in Johnson County, and (2) it violated his right to be convicted of only the offense charged insofar as there was evidence presented at trial that the same acts occurred in Morgan County and, without requiring the jury to find that the charged conduct occurred in Johnson County, the jury may have convicted him based on the Morgan County acts. We disagree.

I.      **The trial court did not abuse its discretion in excluding defense witness Rogers as a sanction for a discovery violation.**

In his first point on appeal, Kerksiek argues that the trial court abused its discretion in refusing to allow defense witness Rogers to testify. Though not mentioned

in Kerksiek's opening brief, the trial court excluded Rogers as a sanction for Kerksiek's violation of Rule 25.05(a)(2) by failing to timely disclose Rogers as a potential witness.

"[O]n written request by the state, defendant shall disclose to counsel for the state . . . [t]he names and last known addresses of persons, other than defendant, whom defendant intends to call as witnesses at any hearing or trial."  Rule 25.05(a)(2). "Requests or motions for discovery shall be answered within fourteen days after service of the request."  Rule 25.02(b).  "This obligation is continuing; if the defendant later receives more information than initially disclosed, he has the duty to disclose this information to the state as well."  *State v. Walkup*, 220 S.W.3d 748, 753 (Mo. banc 2007) (citing Rule 25.08).

Here, the State filed two requests under Rule 25.05 for Kerksiek to disclose the names and addresses of those he intended to call as witnesses at trial (first on October 15, 2020, and again on November 23, 2020), and Kerksiek failed to respond to either request. Consequently, the day before trial (May 3, 2021), the State filed a motion under Rule 25.18[4] to preclude Kerksiek from presenting any witnesses at trial.  The trial court noted that "obviously the defense had an obligation to provide these names, [and] I don't know why that didn't happen."  But the court chose to overrule the State's motion "to make sure the defendant has every chance to have, you know, to present their defense." The court also directed Kerksiek to provide a list of anticipated witnesses to the State immediately thereafter.

---

[4] Rule 25.18(a) allows a court to exclude evidence as a sanction for failure to comply with discovery obligations.

After the State rested its case, it renewed its motion to exclude Kerksiek's anticipated witnesses McCroy and Ritchie (Kerksiek's mother). The court sustained the State's objection generally but nevertheless allowed the witnesses to testify to very specific issues directed at Victim's credibility. It was not until just before the close of Kerksiek's case that Kerksiek first indicated his desire to call Rogers as a witness. Kerksiek's counsel acknowledged that he did not endorse Rogers, never intended to call Rogers as a witness, and was doing so at that time only on Kerksiek's insistence. The State objected, arguing that the endorsement was an untimely surprise, leaving the State with no time to verify the accuracy of Rogers's proposed testimony, which focused on a specific act allegedly engaged in by Victim. Kerksiek's counsel acknowledged, "it is a surprise witness." The court sustained the State's objection, noting, "If this was last night even, I would do it; if this was first thing this morning, but it is really not fair to the State to do it at this point when we don't have any time to take a break." Kerksiek now urges that the court abused its discretion in doing so.

Where a defendant fails to endorse a witness prior to trial in response to a request from the State under Rule 25.05(a)(2), "the trial court has discretion in determining whether a witness should be permitted to testify and we review only for an abuse of discretion [that] results in fundamental unfairness." *State v. Bolen*, 731 S.W.2d 453, 460 (Mo. App. E.D. 1987). "An appellate court finds fundamental unfairness when the exclusion of the testimony substantively alters the outcome of the trial." *State v. Lawrence*, 569 S.W.3d 545, 551 (Mo. App. S.D. 2019). "As a matter of law, no abuse of discretion exists when the court refuses to allow the late endorsement of a defense

8

witness whose testimony would have been cumulative, collateral, or if the late endorsement would have unfairly surprised the State." *State v. Williams*, 853 S.W.2d 371, 373-74 (Mo. App. E.D. 1993). "Further, the exclusion of witnesses may be appropriate if there is no reasonable justification for the failure to disclose." *State v. Hillman*, 417 S.W.3d 239, 246 (Mo. banc 2013).

Here, despite his counsel's concession at trial, Kerksiek now argues that Rogers was *not* a surprise witness because he was listed on the felony information. Kerksiek argues that, simply by virtue of the fact that Rogers was listed on the felony information, *either* party was thereafter allowed to call him as a witness without any further need for endorsement. Accepting this argument, however, would nullify an entire subsection of Rule 25.05. Just as "[t]he state is not obligated to call every witness it has endorsed," *State v. Cameron*, 604 S.W.2d 653, 659 (Mo. App. E.D. 1980), endorsing a witness on the information certainly does not apprise the State of a *defendant's* intent to call that same person as a witness. That is the purpose of Rule 25.05(a)(2). *See State v. Whitfield*, 837 S.W.2d 503, 508 (Mo. banc 1992) (noting that the purpose of Rule 25.05 is to allow the State "to know the witnesses and evidence to be introduced at trial.").

Additionally, Rogers's proposed testimony would have been both cumulative and collateral. During the offer of proof, Rogers testified that he lived with Kerksiek and Victim at Girlfriend's house in Warrensburg. Rogers testified that he frequently worked on cars with Kerksiek. He further testified that he never saw Kerksiek use Victim's laptop, but he witnessed Kerksiek remove Victim's bedroom door as a consequence for Victim "keeping her door locked not letting him in the room," "doing things that she

9

knew she wasn't supposed to be doing," and not "minding or listening." Rogers further testified that, when Victim "g[o]t in trouble by [Kerksiek], she would start telling stories." Rogers acknowledged that, before his testimony that day, he never mentioned any of this information to law enforcement.

This testimony was, at best, cumulative to Kerksiek's own testimony that he did not know how to log onto Victim's laptop and never used it himself and that he had, at one point, removed Victim's bedroom door as a consequence for misbehavior. But, mostly, Rogers's proposed testimony was collateral to the issues in the case.

Kerksiek argues that Rogers's testimony went to Victim's credibility or bad character for truth and veracity, which he claims is never collateral. In making this argument, he relies on *State v. Long*, 140 S.W.3d 27 (Mo. banc 2004), but *Long* does not support his argument. *Long* held that "a criminal defendant in Missouri may, in some cases, introduce extrinsic evidence of prior false allegations." *Id*. at 31. But, before this kind of extrinsic evidence is admissible, the defendant must establish that the witness *both* made a false allegation *and* knew that it was false when made. *Id.* Rogers's proposed testimony did neither of those things. Instead, he claimed that, when in trouble, Victim "would start telling stories." Rogers never specified what these "stories" consisted of, whether they were false allegations at all, and, if so, that Victim knew they were false when made. Thus, while *Long* held, generally, that credibility of a witness was not a collateral issue, it was in the context of determining the admissibility of evidence of prior false allegations, which are not at issue in Kerksiek's case.

10

Finally, Kerksiek offered no reasonable explanation for his failure to endorse Rogers at an earlier time. Kerksiek had multiple opportunities to do so; he could have responded to either of the State's Rule 25.05 requests or included Rogers on the list of witnesses he apparently provided to the State before he began presenting evidence in his case in chief. Rogers is Kerksiek's father, and Kerksiek obviously had no trouble locating or talking to Rogers, whereas the State indicated that it never even had an address for him.

In sum, the trial court did not abuse its discretion in excluding Rogers as a witness where Kerksiek repeatedly failed to endorse him as a witness despite knowing, long before trial, who he was and the nature of his testimony. Point I is denied.

**II.     The trial court did not plainly err in providing Instructions numbers 6 and 7 to the jury without requiring the jury to find that the charged conduct occurred in Johnson County.**

In his second and third points, Kerksiek argues that the trial court plainly erred in submitting Instructions numbers 6 and 7 (the verdict directors) because they failed to include an allegation that the conduct occurred in Johnson County. His second point asserts that this failure resulted in a fatal variance between the felony information, which alleged that the conduct occurred in Johnson County, and the verdict directors, which alleged only that the conduct occurred in the State of Missouri. His third point claims that the omission resulted in a due process violation insofar as the jury heard evidence of the same conduct occurring in Morgan County, and without a requirement that the jury find the charged conduct occurred in Johnson County, there was a possibility that it convicted him for the Morgan County conduct. Kerksiek acknowledges that neither of

11

these arguments are preserved for review, as he did not object to either verdict-directing instruction.

### A. Standard of Review

To preserve an instructional challenge, "[c]ounsel shall make specific objections to . . . verdict forms considered erroneous." Rule 28.03. "No party may assign as error the giving . . . [of] verdict forms unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection." *Id*. The objecting party must then also raise the same claim of error in its motion for new trial. *Id*. If a party fails to lodge a specific and timely objection at trial and in the motion for new trial, the claimed instructional error is not preserved for review. *State v. Myles*, 479 S.W.3d 649, 655 (Mo. App. E.D. 2015).

Here, while Kerksiek pointed out the omission of Johnson County from the verdict directors, he accepted that omission after the prosecutor showed him that the county where the charged conduct was alleged to have occurred is no longer included in the Missouri Approved Instructions (MAI).[5] He lodged no further objection. Though he did raise the omission in his motion for new trial, the basis for his claim of error had nothing to do with an alleged variance between the charging document and the verdict directors;

---

[5] As the prosecutor noted at Kerksiek's trial, the verdict directors for both first-degree statutory sodomy and incest used to require an allegation of the county where the charged conduct occurred, but the 2017 revision of the instructions omitted that requirement. *Compare* MAI-CR 320.11 (9-1-08), *with* MAI-CR 420.16 (7-1-17), *and* MAI-CR 322.03 (1-1-11), *with* MAI-CR 422.04 (7-1-17). The notes on use indicate, "The MAI-CR 4th instructions do not include venue as an element of the verdict directors [because v]enue is not an element of a criminal offense and the state is not required to prove venue at trial." MAI-CR 404.02 (1-1-19), Notes on Use 8.

instead, it focused solely on the alleged due process violation. Thus, neither of Kerksiek's claims of instructional error are preserved.

When an appellant fails to preserve a claim for appellate review, it is subject to only plain error review. Rule 30.20. But plain error review is discretionary, and we will decline to exercise our discretion "unless the claimed error 'facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted.'" *State v. Brandolese*, 601 S.W.3d 519, 526 (Mo. banc 2020) (quoting *State v. Clay*, 533 S.W.3d 710, 714 (Mo. banc 2017)). Here, we decline to review Kerksiek's second point on appeal relating to an alleged variance between the charging document and the verdict directors, as this claim was never raised before the trial court, and it fails on its face to establish any grounds for belief in a manifest injustice or a miscarriage of justice.[6] Thus, Point II is denied.

With respect to Kerksiek's third point on appeal, we will review it for plain error. Plain error review is a two-step process. *State v. Putfark*, 651 S.W.3d 869, 880 (Mo. App. W.D. 2022). First, we examine the claim "to determine whether 'plain error' has, in fact, occurred." *Id*. "Plain errors are those which are 'evident, obvious, and clear.'" *Id.* (quoting *State v. Scurlock*, 998 S.W.2d 578, 586 (Mo. App. W.D. 1999)). If we find plain error exists, we then examine the record to determine whether that error resulted in

---

[6] A variance occurs "[i]f the charging document and verdict-directing instruction submit different methods of committing the crime." *State v. Ganaway*, 624 S.W.3d 361, 367 (Mo. App. E.D. 2021). Here, both the felony information and the verdict directors charged the same methods of commission for both first-degree statutory sodomy and incest, namely that Kerksiek engaged in deviate sexual intercourse with Victim by placing his penis in her anus. Thus, there was no variance, much less a fatal one.

either a manifest injustice or a miscarriage of justice. *Id*. "The defendant bears the

burden of showing that an alleged error has produced such a manifest injustice." *Id*.

(quoting *State v. Isa*, 850 S.W.2d 876, 884 (Mo. banc 1993)).

### B. There was no due process violation.

In his final point on appeal, Kerksiek argues that the omission from the verdict

directors of an allegation that the conduct occurred in Johnson County amounted to a due

process violation. Kerksiek contends that, insofar as the jury received evidence that the

same conduct occurred in Morgan County, the absence of an allegation that the charged

conduct occurred in Johnson County left the jury open to convicting Kerksiek based on

the Morgan County conduct because the date range of offenses in both counties was the

same.[7] We disagree.

As noted above, both verdict directors complied with the applicable MAI, despite

the omission of an allegation that the conduct occurred in Johnson County. Though,

generally, the "[u]se of an approved instruction cannot, by definition, be deemed plain

error," *State v. Goodwin*, 891 S.W.2d 435, 438 (Mo. App. W.D. 1994), there is an

---

[7] Kerksiek dances around a jury unanimity claim arising from a "multiple acts" case, as presented in *State v. Celis-Garcia*, 344 S.W.3d 150 (Mo. banc 2011), without ever directly claiming a jury unanimity problem but still asserting that "[t]he issue here is in the same vein as in *Celis-Garcia*." To the extent his argument can be, in any way, perceived as raising a jury unanimity issue, we reject it because this is not a "multiple acts" case implicating jury unanimity. "A multiple acts case arises when there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count." *State v. Celis-Garcia*, 344 S.W.3d 150, 155-56 (Mo. banc 2011). Here, there was evidence of two distinct acts—one in Morgan County and one in Johnson County—and each act was the subject of its own charge, albeit in different venues.

14

exception "where the MAI is not in 'proper form' because it fails to comport with substantive law." *State v. Dominguez-Rodriguez*, 471 S.W.3d 337, 343 (Mo. App. E.D. 2015).

Here, Kerksiek argues that the omission failed to comport with substantive law insofar as it violated his right to due process by allowing the jury to convict him of "uncharged allegations of statutory sodomy and incest offenses in Morgan County." But there is a fundamental flaw to Kerksiek's argument. The Morgan County offenses are not "uncharged"; Kerksiek was charged with one count of first-degree statutory sodomy and one count of incest in Morgan County as well—a fact the jury was made aware of by Kerksiek's own testimony.

Because "[a] criminal defendant has the right to be tried . . . for [only] the offense for which he is charged," *State v. Austin*, 411 S.W.3d 284, 293 (Mo. App. E.D. 2013) (quoting *State v. Blakey*, 203 S.W.3d 806, 811 (Mo. App. S.D. 2006)), courts are hesitant to admit evidence of *uncharged* offenses for fear that the jury might believe the defendant to have escaped punishment for the uncharged offenses and, therefore, convict on the charged offenses simply to ensure that the defendant is punished. *State v. Brown*, 596 S.W.3d 193, 212-13 (Mo. App. W.D. 2020). But this concern is not present in Kerksiek's case, as the jury was well aware of the facts that Victim claimed Kerksiek engaged in deviate sexual intercourse by putting his penis in her anus on two occasions— once in Johnson County at Girlfriend's Warrensburg home, and once in Morgan County at Stepfather's Stover home—and that Kerksiek had been charged for both acts, one in each county. Moreover, the jury was also well aware that the only charges it was to

15

consider in evaluating guilt were those alleged to have occurred in Johnson County. Both

the prosecutor and Kerksiek's counsel made sure of it during closing argument:

> [Prosecutor]: What does the State have to prove in this case? Well, as to
> Count I in Instruction No. 6 we have to show between March 1st and May
> 3rd of 2019 this happened. We have done that. *We have to show it
> happened here. We have done that.*
>
> . . .
>
> [Defense Counsel]: [W]e are here charged in Johnson County and it is
> Johnson County court and so *we are here about the incident here in
> Johnson County* and what happens in Johnson County[.]

(Emphasis added.)

In short, Kerksiek has failed to establish the existence of any error, much less plain

error, in the language of the MAI-compliant verdict directors. Therefore, Point III is

denied.

## Conclusion

Kerksiek has failed to establish any trial court error. Therefore, the trial court's

judgment is affirmed.

Karen King Mitchell, Judge

Edward R. Ardini, Jr., Presiding Judge, and Lisa White Hardwick, Judge, concur.